

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00289-CR

JESSE THOMAS SUTHERLAND, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 427th District Court
Travis County, Texas
Trial Court No. D-1-DC-11-200590, Honorable Jim Coronado, Presiding

April 7, 2014

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Jesse Thomas Sutherland, appeals his conviction for felony driving while intoxicated[1] and the resulting imposition of a negotiated five-year term of community supervision. Following the trial court's denial of a motion to suppress evidence of his intoxication, appellant pleaded guilty to the charges but reserved his right to appeal the trial court's ruling on his motion to suppress evidence. He challenges the constitutionality of the procedure and authority under which a sample of his blood

---

[1] Appellant was charged with driving while intoxicated, his third or more such offense and a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2013).

was taken without his consent. On that basis, he contends the trial court erred by denying his motion to suppress the results of the testing done on the sample of his blood taken in such a manner. We will sustain his point of error, reverse the trial court's order denying appellant's motion to suppress, and remand the cause to the trial court for further proceedings.

## Factual and Procedural History

<u>Traffic Stop and Arrest</u>

Late on the night of February 2, 2011, Austin Police Department Officer Shane Housmans initiated a traffic stop of a vehicle traveling southbound on South Congress Street after that vehicle changed lanes without using a turn signal and then changed back to its original lane, again without signaling intent to do so. After the vehicle had pulled over, Housmans approached the driver, appellant, and, after speaking with appellant for "a bit," Housmans asked him to step out of the vehicle. Housmans administered field sobriety tests on appellant, arrested appellant based on his performance of the field sobriety tests and on the resulting suspicion that he was driving while intoxicated, and asked that appellant provide a specimen of his breath. Appellant refused. Dispatch provided Housmans with Texas Department of Public Safety records based on appellant's license number indicating that he had two or more previous convictions for driving while intoxicated. Housmans transported appellant to the Travis County jail where, ultimately, a blood sample was taken without appellant's consent and without a warrant.

Housmans testified that, as justification for the warrantless blood draw, he relied solely on the provision in the Texas Transportation Code that requires him to obtain a sample of a suspect's blood whenever he learns that the individual has been convicted two or more times of driving while intoxicated. The provision to which Housmans referred provides, in pertinent part, as follows:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> . . .
>
> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
>
> . . .
>
>> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011). Appellant maintains that, regardless of Section 724.012(b)(3)(B)'s mandatory language, constitutional protections against unreasonable searches and seizures require that a warrantless search be supported by an established exception to the Fourth Amendment's warrant requirement, in this case, the exigent circumstances exception. Further, appellant contends no established exception—exigent circumstances or otherwise—applied here.

3

The Warrant Process in Travis County

Erik Carey, a nighttime magistrate for the City of Austin Municipal Court, testified that a magistrate is available twenty-four hours a day at the central booking facility for Travis County, which is located in the basement of the Travis County jail. Carey estimated that it would take between five and seven minutes for him to review an affidavit presented to him in support of a search warrant seeking a blood sample in a DWI case. Conveniently, a phlebotomist is located approximately 100 feet down the hall from the magistrate's office. Though Carey was uncertain when Travis County instituted around-the-clock phlebotomist service, we confirm later in the record that such service was indeed available the night appellant was arrested. We learn, too, that Carey was the magistrate on duty the night appellant was arrested. Carey added that his general policy is that, even if he is busy with other matters, he permits an officer to interrupt the proceedings to present an affidavit in support of a warrant application in a DWI case because of the urgency and time-sensitive nature of a blood draw in such a case. Of course, we do not know if that is the policy of all the magistrates, but we know that it is Carey's policy and that he was the nighttime magistrate on duty the night appellant was arrested.

The arresting officer, Housmans, conceded that there was no collision, no medical emergency, and no need to take appellant or any other person to the hospital for medical treatment the night in question. Housmans explained that appellant refused both breath and blood test requests. He also testified that it is approximately 2.6 miles from the location at which appellant was stopped and ultimately arrested to the Travis County jail. Housmans added that it would take approximately nine minutes to drive the

2.6 miles as a general rule, varying with traffic volume and other driving conditions. Housmans conceded, too, that he did not seek out a magistrate the night appellant was arrested; it was Housmans's understanding of Section 724.012 that he was not required to do so. In fact, Housmans testified that he understood Section 724.012 as placing upon him a duty to take appellant for a mandatory blood draw under the circumstances presented to him the night appellant was arrested: "I have no discretion. The statute says I shall." To fail to do so, he testified, would mean that he "would be violating the law." Housmans took appellant to the phlebotomist's office down the hall from the magistrate's office, and there a sample of appellant's blood was taken without his consent.

As to the relevant time frames involved here, Housmans stopped appellant's vehicle at 11:30 p.m. on the night of February 2, 2011. Housmans took appellant into custody at 11:54 p.m. Appellant was noted as arriving in Travis County central booking at 12:22 a.m. on February 3, and his blood was drawn at 12:48 a.m. So, from the time that Housmans stopped appellant to the time that appellant's blood was drawn, one hour and eighteen minutes had passed.

Housmans also testified about the FASTER system that the Austin Police Department uses to facilitate quicker document assembly with information entered. He explained that he begins to enter the relevant information at the scene of the traffic stop and that information is stored electronically and used in the assembly of relevant documents later as needed. That means, according to Housmans, the relevant information needed to complete an application for a search warrant in this type of situation is readily available to him, can be quickly and easily assembled into the

5

application form, and need only be submitted to his supervisor prior to being presented to the magistrate. Housmans testified that it would have taken him five to ten minutes in terms of preparation of the documents for the magistrate's review. Housmans testified that the time to obtain a warrant in such a situation "wouldn't take long."

Glen Kreger, a sergeant with the Austin Police Department, testified about the warrant process in DWI cases, as well. He testified that, whenever the APD DWI Units are on duty, phlebotomists are available at central booking. Phlebotomists are also on call on the days during which the DWI Units are not on duty. Kreger, too, explained that he understood Section 724.012(b)(3)(B) to speak in mandatory terms and, in doing so, required officers to take a blood sample under the circumstances outlined in that section. Kreger testified that the warrant process in Travis County took longer than Housmans's estimations. Kreger noted that the "largest factor" in determining the amount of time that the warrant process would take is whether the suspect is at the jail or in the hospital. The warrant process in cases in which the suspect is at the hospital is particularly time-consuming, he explained. Kreger also noted the limited availability of the magistrate while he or she is performing other duties. He testified that, if the magistrate is performing other duties, Kreger is "taking backseat" to those other proceedings. He has had the warrant process take as little as thirty-six minutes and as long as an hour and forty minutes, with the average being just over an hour, he testified.

Issue Raised on Appeal

Appellant reserved his right to appeal the trial court's denial of his motion to suppress evidence and brings to this Court the following issue:

6

In the absence of exigent circumstances or consent[,] does Section 724.012(b)(3)(B) of the Texas Transportation Code violate the Texas and United States constitutional prohibitions against unreasonable searches and seizures where the statute requires law enforcement officers to seize a specimen of a DWI arrestee's blood without a search warrant in all cases where the officer believes the arrestee has been previously convicted of DWI two or more times.

To address this issue, we outline the standard of review, general principles of the Fourth Amendment, cases applying those principles to similar situations, and recent developments in this area of the law.

## Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts *de novo. Id.* In reviewing the trial court's decision, we do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Id.* If the trial court's decision is correct under any theory of law applicable to the case, it will be sustained. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc). Additionally, the legal question whether the

7

totality of circumstances justified the officer's actions is reviewed *de novo*. *Hudson v. State*, 247 S.W.3d 780, 784 (Tex. App.—Amarillo 2008, no pet.).

Applicable Law

General Fourth Amendment Principles

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV; *see Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013). Cases have held that a warrantless search of the person is reasonable only if it falls within a recognized exception. *See, e.g.*, *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *see also McNeely*, 133 S. Ct. at 1558. Those principles apply to the type of search at issue in this case, "which involved a compelled physical intrusion beneath [the defendant]'s skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation." *McNeely*, 133 S. Ct. at 1558. Such an invasion of bodily integrity implicates an individual's "most personal and deep-rooted expectations of privacy." *Id.* (quoting *Winston v. Lee*, 470 U.S. 753, 760, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985), and citing *Skinner v. Ry. Labor Exec. Assn.*, 489 U.S. 602, 616, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989)).

One well-established exception to the Fourth Amendment's warrant requirement is the "exigent circumstances" exception and "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is

objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. ___, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011) (internal quotations omitted). A variety of scenarios may give rise to circumstances sufficiently exigent to justify a warrantless search, the one most relevant to the instant case being the prevention of the imminent destruction of evidence. *See McNeely*, 133 S. Ct. at 1558–59 (citing *Cupp v. Murphy*, 412 U.S. 291, 296, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973), and *Ker v. California*, 374 U.S. 23, 40–41, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963) (plurality opinion)).

To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, we look to the totality of circumstances. *See id.* at 1559. We apply this "finely tuned approach" to Fourth Amendment reasonableness in this context because the police action at issue lacks "the traditional justification that . . . a warrant . . . provides." *See id.* (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 n.16, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001)). In the absence of a warrant, "the fact-specific nature of the reasonableness inquiry" demands that we evaluate each case of alleged exigency based "on its own facts and circumstances." *Id.* (quoting *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996), and *Go-Bart Imp. Co. v. United States*, 282 U.S. 344, 357, 51 S. Ct. 153, 75 L. Ed. 374 (1931)).

## *Schmerber v. California*

The United States Supreme Court first considered the Fourth Amendment restriction on nonconsensual blood draws in *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). Schmerber, as driver, suffered injuries in a vehicle collision and was taken to the hospital for treatment. *See Schmerber*, 384 U.S.

9

at 758. While he was at the hospital, he was arrested for driving while intoxicated, and a sample of his blood was taken without his consent while he was unconscious. *See id.* at 758–59.

The *Schmerber* Court upheld the warrantless blood draw because, on the facts of that case, the arresting officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *See id.* at 770 (internal quotations omitted). The Court emphasized that, indeed, "[t]he importance of informed, detached[,] and deliberate determinations" by a "'neutral and detached magistrate'" before allowing a law enforcement officer to "invade another's body in search of evidence of guilt is indisputable and great." *Id.* Nonetheless, on the "special facts" presented in *Schmerber*, the Court observed that the record supported the conclusion that exigent circumstances justified the warrantless blood draw. *Id.* at 770–71.

In arriving at that conclusion, the *Schmerber* Court recognized the natural dissipation of alcohol shortly after a person stops drinking. *Id.* at 770. It added that "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." *Id.* at 770–71. In light of those "special facts," the United States Supreme Court deemed it appropriate for the officer to have acted without a warrant. *Id.* at 771. Finally, the *Schmerber* Court went on to expressly limit its conclusion to "the facts of the present record." *Id.* at 772.

*Aviles v. State*

The San Antonio Court was confronted with a factual situation very similar to that presented to this Court in the instant case. *See Aviles v. State*, 385 S.W.3d 110 (Tex. App.—San Antonio 2012, pet. ref'd), *vacated*, 187 L. Ed. 2d 767, 2014 U.S. LEXIS 563 (Jan. 13, 2014). In that case, Aviles had been stopped and arrested for DWI. *Id.* at 112. The officer had learned that Aviles had two prior DWI convictions, then read the DWI statutory warnings, and requested a sample from Aviles of his breath or blood. *Id.* Aviles refused. *Id.* The officer, acting without a warrant and relying on Section 724.012(b)(3)(B), as did Housmans, took Aviles to a nurse and filled out forms authorizing a mandatory nonconsensual blood draw. *Id.* at 112–13.

Aviles argued that the trial court erred by admitting over his motion to suppress the results of testing done on his blood specimen because the specimen was taken without consent and without a warrant. *See id.* at 112. In rejecting his contention, the San Antonio Court relied on the implied-consent provision of the Texas Transportation Code and the following excerpt from the Texas Court of Criminal Appeals:

> The implied consent law expands on the State's search capablities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.

*Id.* at 115 (quoting *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (en banc)); *see* Tex. Transp. Code Ann. § 724.011 (West 2011); *Aviles*, 385 S.W.3d at 115. The *Aviles* court noted that the officer requested but was refused a specimen and read the statutory warnings to Aviles, whom the officer knew to have been already twice convicted of DWI. *Aviles*, 385 S.W.3d at 112. Under those circumstances, Section

11

724.012(b)(3)(B) required that the officer seize a specimen of blood. *See id.* at 116. That situation, according to the court's reasoning, was one of the "circumstances" referred to in *Beeman* in which the Texas Court of Criminal Appeals has held that blood may be drawn without a warrant. *See id.* (citing *Beeman*, 86 S.W.3d at 616). That the officer could have gotten a warrant before authorizing the blood draw was "immaterial given the mandate of [S]ection 724.012(b)(3)(B)." *Id.* Ultimately, the San Antonio Court concluded that "the warrantless seizure of Aviles's blood was conducted according to the prescriptions of the [Texas] Transportation Code, and without violating Aviles's Fourth Amendment rights." *Id.* The court affirmed the trial court's order denying Aviles's motion to suppress. *Id.*

### *McNeely v. Missouri*

As *Aviles* was being considered and decided, a case out of Missouri was making its way to the United States Supreme Court. *See State v. McNeely*, 358 S.W.3d 65 (Mo. 2012) (en banc) (per curiam), *aff'd*, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013). Faced with facts similar to those before us and the State's position that the natural dissipation of alcohol from the bloodstream was *per se* exigent circumstances, the Missouri Supreme Court held as follows:

> The patrolman here, however, was not faced with the "special facts" of *Schmerber*. Because there was no accident to investigate and there was no need to arrange for the medical treatment of any occupants, there was no delay that would threaten the destruction of evidence before a warrant could be obtained. Additionally, there was no evidence here that the patrolman would have been unable to obtain a warrant had he attempted to do so. The sole special fact present in this case, that blood-alcohol levels dissipate after drinking ceases, is not a *per se* exigency pursuant to *Schmerber* justifying an officer to order a blood test without obtaining a warrant from a neutral judge.

*McNeely*, 358 S.W.3d at 67.[2]  The United States Supreme Court granted certiorari to consider the constitutional viability of the *per se* exigency urged by the State of Missouri.  *Missouri v. McNeely*, 133 S. Ct. 98, 183 L. Ed. 2d 737 (2012).

In *McNeely*, the high court did reiterate its recognition that exigent circumstances may, in some instances, justify a warrantless blood draw.  *See McNeely*, 133 S. Ct. at 1556 (citing the general holding of *Schmerber*, 384 U.S. at 770–71).  The State of Missouri sought a *per se* rule that, in cases in which a person is suspected of driving while intoxicated, exigent circumstances will *necessarily* exist because blood alcohol content is inherently evanescent.  *Id.* at 1560.  The *McNeely* Court accepted as true the inherent evanescence of blood alcohol content but rejected such a *per se* rule; it concluded unequivocally that the natural dissipation of alcohol in a person's blood as the body metabolizes the alcohol was, standing alone, insufficient to constitute exigent circumstances that would support a warrantless blood draw.  *See id.* at 1561–63. Instead, we must look at the totality of the circumstances surrounding the arrest and blood draw to determine the reasonableness of that blood draw.  *See id.* at 1563.  The totality of the circumstances must reveal exigent circumstances in addition to the natural dissipation of alcohol from the human body.  *See id.* at 1556, 1560–61.

The factual background at issue in *McNeely* is not unlike the facts presented in the instant case.  McNeely was stopped after an officer observed him exceeding the posted speed limit and repeatedly crossing the centerline.  *Id.* at 1556.  The officer noted several signs of intoxication when he approached McNeely: slurred speech,

---

[2] The case was transferred from the intermediate appellate court to the Missouri Supreme Court. *See State v. McNeely*, No. ED96402, 2011 Mo. App. LEXIS 858, at *1 (Mo. App. E.D. June 21, 2011).

13

blood-shot eyes, and the odor of alcohol. *Id.* McNeely acknowledged having had "a couple of beers." *Id.* McNeely performed poorly on the field sobriety tests and declined the officer's invitation to take a breath test at the scene. *Id.* at 1556–57. When en route to the police station, McNeely voiced his intent to refuse to take a breath test there as well. *See id.* at 1557. In light of that development, the officer took McNeely to a nearby hospital where McNeely also refused to take a blood test; at the officer's direction, a sample of McNeely's blood was taken nonetheless. *See id.*

Though not directly confronted with the issue whether exigent circumstances were otherwise presented by that case, the Court did lend some insight into the factors that might be considered when analyzing the totality of the circumstances for the presence of exigent circumstances. *McNeely* first looked back to *Schmerber* for the types of "special facts" to consider when determining whether exigent circumstances were at hand. *See id.* at 1559–60. That is, we should consider whether additional delay related to accident investigation and medical treatment made the time required to secure a warrant more burdensome and more likely to result in the destruction of evidence. *See id.* at 1560 (citing *Schmerber*, 384 U.S. at 770–71).

*McNeely* also noted that a *per se* rule as urged by the State of Missouri failed to account for advances in the processing of warrant applications that have made the process more expeditious and "other ways to streamline the warrant process." *See id.* at 1561–62. From this observation, we take that technological or logistical advances that are designed to streamline the process through which a warrant may be obtained are other factors to consider when examining the totality of the circumstances to

14

determine whether those circumstances were exigent such that the warrant requirement may be dispensed with in a given situation. *See id.*

Again, *McNeely*, like *Schmerber*, does recognize the reality that the body metabolizes alcohol and thereby rids it from the blood. *See id.* at 1560. But that reality alone is not enough to always justify a warrantless blood draw. *See id.* at 1561. "We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *Id.* However, "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so," regardless, it seems, of Section 724.012(b)(3)(B)'s mandatory language directing an officer to obtain a blood sample. *See id.*

It remains clear from *McNeely* that the dissipation of alcohol alone will not necessarily be exigent circumstances, that some other "special facts" must lend themselves to the exigency of the situation. *See id.* "In short, while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically." *Id.* at 1563. "Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.*

<u>Recent Developments Involving *McNeely* and *Aviles*</u>

A few intermediate appellate courts in Texas had relied on the implied-consent principles in *Aviles* to distinguish the exigent-circumstances principles of *McNeely* from those cases at bar examining mandatory blood draws under Section 724.012(b)(3)(B). That reliance ended in large part on January 13, 2014, when the United States Supreme Court vacated and remanded the San Antonio Court's judgment in *Aviles* for "further consideration" in light of *McNeely*. See *Aviles v. Texas*, No. 13-6353, 187 L. Ed. 2d 767, 2014 U.S. LEXIS 563 (Jan. 13, 2014). From this, we take that the *Aviles* position—distinguishing cases involving blood draws pursuant to Section 724.012(b)(3)(B), as dealing with implied consent, from cases implicating any exigent circumstances analysis—as a no longer viable position. By vacating and remanding *Aviles*, it would seem that the United States Supreme Court has rejected any position that would treat Section 724.012(b)(3)(B) as an exception to the Fourth Amendment, separate and apart from the traditional, well-established exceptions. Similarly, it would seem that the position advanced in *Aviles* that the Texas Transportation Code's implied-consent provision applies to justify the warrantless mandatory blood draw of Section 724.012(b)(3)(B) is also constitutionally infirm. *See State v. Villarreal*, No. 13-13-00253-CR, 2014 Tex. App. LEXIS 645, at *29 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. filed Mar. 11, 2014) (noting that the mandates of Section 724.012(b)(3)(B) come into play strictly when consent had been refused and, therefore, to say that it is based on implied consent is incongruent). In other words, regardless of the mandatory tone of Section 724.012(b)(3)(B)'s directive to officers, it appears there must still be exigent circumstances that would justify a warrantless search of the suspect's blood. And, as

we learned from *McNeely,* the natural dissipation of alcohol by way of the body's metabolic processes, alone, is insufficient to constitute exigent circumstances; there must be more.

Indeed, since the *Aviles* remand, a sister court has since taken a similar position. *See Villarreal*, 2014 Tex. App. LEXIS 645, at *12–13, *33. In *Villarreal*, on facts very similar to the instant case, the State conceded that there were no exigent circumstances, no consent, and no warrant. *Id.* at *2, *28. The State relied solely on the appellant's refusal and the criteria for the mandatory blood draw having been satisfied. *See id.* at *5 (citing Tex. Transp. Code Ann. § 724.012(b)(3)(B)). The trial court had granted Villarreal's motion to suppress the results of the testing on the blood drawn. *Id.* at *1. The State appealed the trial court's ruling, contending that the trial court erred by granting the motion to suppress because the police officer's compliance with the "repeat offender" provision of the mandatory blood draw law precluded the involuntary, warrantless blood draw in this case from violating the Fourth Amendment. *See id.* at *5; *see also* U.S. Const. amend. IV; Tex. Transp. Code Ann. § 724.012(b)(3)(B).

As we have noted, the court observed that Section 724.012(b)(3)(B) is premised on the *refusal* of consent rather than consent. *See id.* at *29. Further, *Villarreal* added that no court has recognized Section 724.012(b)(3)(B) as a new and distinct exception to the Fourth Amendment's warrant requirement, and, therefore, its constitutionality must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement. *See id.* at *35. In *Villarreal*, given the absence of a warrant, exigent circumstances, and consent, the court agreed with the trial court's conclusion

17

that the State failed to demonstrate that the involuntary blood draw was reasonable under the Fourth Amendment or that an exception to the warrant requirement applied to that case. *Id.* at *41.

Even more recently, the Houston First Court seems to have taken a contrary position in this context, a position more in keeping with that espoused in *Aviles*: that the implied consent of the Texas Transportation Code's statutory scheme provided the necessary exception to the Fourth Amendment's warrant requirement. *See Perez v. State*, No. 01-12-01001-CR, 2014 Tex. App. LEXIS 2681, at *16–20 (Tex. App.— Houston [1st Dist.] Mar. 11, 2014, no pet. h.). In *Perez*, the court seems to have returned somewhat to the reasoning of *Aviles* with respect to Section 724.012(b)(3)(B)'s evolving relationship with the Fourth Amendment. *See id.* at *17–19.[3]

In consideration of the United States Supreme Court's remand of *Aviles* for consideration in light of its opinion in *McNeely*, we see ourselves obligated to undertake an analysis of the totality of the circumstances presented in the instant case to

---

[3] *Perez* and *Villarreal* seem to represent a developing conflict between sister courts, and the Texas Court of Criminal Appeals may have the opportunity to resolve that split or provide valuable guidance if the issue is properly framed and the court grants the State's recently filed petition for discretionary review in *Villarreal*. *See* No. PD-0306-14. Additional guidance in this developing area of the law may also come from the Texas Court of Criminal Appeals's review of the Tyler Court's opinion in *State v. Baker*, No. 12-12-00092-CR, 2013 Tex. App. LEXIS 12818, at *3, *23–26 (Tex. App.—Tyler Oct. 16, 2013, pet. granted) (mem. op., not designated for publication), in which the intermediate court upheld the suppression of evidence gathered as a result of a mandatory blood draw. The Texas Court of Criminal Appeals granted the State's petition for discretionary review on January 29, 2014. *See State v. Baker*, No. PD-1592-13, 2014 Tex. Crim. App. LEXIS 133 (Tex. Crim. App. Jan. 29, 2014). One of the issues on which the Texas Court of Criminal Appeals granted review in *Baker* is as follows: "Did the appeals court err by failing to hold that the draw of Appellee's blood was lawful under the implied consent mandatory blood-draw provision, which establishes advance voluntary and irrevocable consent under narrowly tailored circumstances?" The second issue on which review was granted explores the totality of the circumstances dealing with exigent circumstances.

determine whether the warrantless blood draw was reasonable.[4]  *See Villarreal*, 2014

Tex. App. LEXIS 645, at *12–13; *see also Pearson v. State*, No. 13-11-00137-CR, 2014

Tex. App. LEXIS 2514, at *7–11 (Tex. App.—Corpus Christi Mar. 6, 2014, no pet. h.)

(mem. op., not designated for publication).

## Analysis

Per *McNeely*, we look to the facts of the instant case to evaluate the exigency of

the circumstances to determine whether the warrantless blood draw was reasonable in

this case.

Metabolization of alcohol in the bloodstream and the resulting loss of evidence

are among the factors that we consider when determining whether a warrant was

required.  *See McNeely*, 133 S. Ct. at 1568.  We, of course, have such a case here that

the metabolization of alcohol was a consideration.  That will, of course, frequently be

true in a DWI case.  Apart from the natural dissipation of alcohol by metabolic

processes, however, this case, as the Missouri Supreme Court characterized the case

in *McNeely*, was "unquestionably a routine DWI case."  *See McNeely*, 358 S.W.3d at

74.  The arresting officer, Housmans, did not describe any factors that would suggest he

was confronted with an emergency or any unusual delay in securing a warrant.  He

---

[4] This case was transferred from Austin, but that court has not yet spoken on this particular matter.  In the one case that appears to have presented the issue on appeal, the Austin Court concluded that the appellant failed to preserve his complaint in the trial court and that, therefore, the issue was not properly before it.  *See Sherry v. State*, No. 03-13-00126-CR, 2013 Tex. App. LEXIS 10354, at *3–5 (Tex. App.—Austin Aug. 16, 2013, pet. ref'd) (mem. op., not designated for publication).  That said, we have no clear and direct precedent on this precise issue.  *See* TEX. R. APP. P. 41.3.  We do note the Austin Court's more general position that Chapter 724 of the Texas Transportation Code does not authorize what the Constitution forbids and, therefore, cannot authorize an involuntary draw when the Constitution forbids it.  *See State v. Mosely*, 348 S.W.3d 435, 442 (Tex. App.—Austin 2011, pet. ref'd).  We add, too, that the Texas Court of Criminal Appeals has expressed a limitation associated with the implied-consent framework of the Texas Transportation Code: "[It] does not give officers the ability to forcibly obtain blood samples from anyone arrested for DWI."  *Beeman*, 86 S.W.3d at 616.

testified that he made no effort to obtain a warrant because he believed that the law required that he obtain a blood sample under the circumstances presented to him.

The record is clear that appellant was not transported to the hospital for medical care and, therefore, no extra delay in that process could be said to lend to the exigency beyond the regular dissipation of alcohol. The scene of the traffic stop was not very far from the booking facility, and transportation time was not a factor that could be said to lend to the exigency of the situation.

Procedures and obstacles in place for obtaining a warrant or the (un)availability of a magistrate may affect whether the police can obtain a warrant in an expeditious manner and may, therefore, lend themselves to an exigency that justifies a warrantless blood draw. *See McNeely*, 133 S. Ct. at 1568. But it would seem that such obstacles were not at all present in the instant case. To the contrary, it would appear that the procedures in place at the Travis County central booking facility have been implemented to streamline the warrant application process. *See id.* A magistrate is available twenty-four hours a day, every day. The magistrate who was on duty the night of appellant's arrest testified that he permits an officer seeking a search warrant for a blood draw in a DWI case to interrupt court proceedings due to the dissipating nature of the evidence and sensitive time frame at issue. The record is not clear whether all the available magistrates have such a policy. Likewise, a phlebotomist is always available, either mere feet down the hall from the magistrate on at least five days of the week or on call at any other time. The record contains a variety of estimates regarding the time involved in obtaining a warrant by way of this streamlined process. But it does appear that the time to complete the warrant application process is not overly burdensome.

On the record before us, the arresting officer was not faced with exigent circumstances such that the natural dissipation of alcohol from appellant's bloodstream would support a warrantless seizure of a specimen of appellant's blood.  We sustain appellant's point of error and conclude that the trial court erred by denying appellant's motion to suppress.  To the extent that Section 724.012(b)(3)(B) can be read to permit, nonetheless, a warrantless seizure of a suspect's blood in the absence of such exigent circumstances or the suspect's consent, it runs afoul of the Fourth Amendment's warrant requirement.

Conclusion

Having sustained appellant's sole point of error, we reverse the trial court's order denying appellant's motion to suppress evidence and remand the cause to the trial court for further proceeding consistent with this opinion.

Mackey K. Hancock
Justice

Publish.