COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| TROY SCOTT BURCIE, | | No. 08-13-00212-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 371st District Court |
| | § | |
| THE STATE OF TEXAS, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC # 1287926D) |
| | § | |

# **O P I N I O N**

This DWI case presents an issue which has percolated through the courts of appeals, and which now has been resolved by the Texas Court of Criminal Appeals:  can the State, consistent with the Fourth Amendment to the U.S. Constitution, take an involuntary blood sample based only upon the Texas implied consent statute?  TEX.TRANSP.CODE ANN. § 724.012(b)(West 2011).  Following the Texas Court of Criminal Appeals recent answer to that question in *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex.Crim.App. Nov. 26, 2014, pet. granted), we reverse the conviction below.

## **FACTUAL SUMMARY**

The underlying facts are uncontested.  Appellant was indicted for felony DWI, having had two prior convictions.  The indictment arose out of Appellant's arrest on July 2, 2012. Officer Reyes of the Fort Worth Police Department initiated a traffic stop when he observed

Appellant driving without headlights at 10:10 p.m. in the evening.[1]  Based on Appellant's slurred speech, bloodshot eyes, and the odor of alcohol, Officer Reyes performed a field sobriety test. Appellant gave six of six positive clues for intoxication on the horizontal gaze nystagmus test; eight of eight clues on the walk and turn test; and three of seven clues on standing on one leg test.  Appellant claimed at the time to have had "one beer with dinner."

The officer placed Appellant under arrest at 10:50 p.m.  A pat down search turned up a prescription pill bottle belonging to Appellant, but which contained a non-matching medication identified as OxyContin.  The officer transported Appellant to the City jail where a blood sample was requested, but refused by Appellant.  A criminal history check turned up two prior DWIs.

Based on the two prior DWIs, and Section 742 of the Transportation Code, the officer took Appellant to a local hospital where a blood sample was taken without his consent at 12:19 a.m.  Officer Reyes' testimony makes clear that the Transportation Code was the single basis for obtaining the blood draw:

Q.  Okay. And is it your understanding that -- or tell me why you were going to get a blood specimen from him.

A.  Well, at that point he was -- he already had two prior convictions.  He was arrested for DWI. So at that time we -- it's a mandatory specimen.  Even though he -- he did not want to provide one, we have to, by law at the time, get one from him, and that's what we were doing.

Q.  Okay.  And so you were following what you believed to be the law in requiring you to get a blood specimen?

A.  Yes, ma'am.

Fort Worth has a procedure in place to obtain a warrant during the late night hours, but Officer Reyes did not utilize it because of Section 724 of the Transportation Code

---

[1]  This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001 (West 2013).  We follow the precedents of the Fort Worth Court to the extent they might conflict with our own.  *See* Tex.R.App. P. 41.3.

Appellant filed a motion to suppress the blood sample claiming that a warrantless blood draw violated the Fourth Amendment, particularly in light of the U.S. Supreme Court's recent decision in *Missouri v. McNeely*, 569 U.S. ___, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). The State responded by arguing that the actual holding of *McNeely* was narrow and not at issue in this case. It further asserted that a number of exceptions to the Fourth Amendment, including an implied consent exception under the Transportation Code, the "special needs" exception, the "search incident to arrest" exception, the automobile exception, and a cumulative "non-dualistic" exception to the Fourth Amendment justified the officer's actions. The trial court denied the motion to suppress without findings of fact or conclusions of law.

Appellant then entered a guilty plea, reserving the ruling on the suppression motion for appeal. He was sentenced to two years in prison and assessed a fine. In a single issue, Appellant contends the trial court abused its discretion in upholding the involuntary blood draw in light of *McNeely*. The State responds, as it did below, contending *McNeely* is inapplicable, and justifying the involuntary blood draw on several exceptions to the Fourth Amendment: implied consent, search incident to arrest, and the "cumulative, non-dualistic approach to exceptions and reasonableness."

## ANALYSIS

The United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) held that an involuntary blood draw could pass Fourth Amendment scrutiny. The court first acknowledged that taking blood from a person constituted a search and seizure under the Fourth Amendment. *Id*. at 767. But the involuntary blood draw was reasonable under the exigent circumstances exception to the Fourth Amendment based on three facts established by the record in that case. *Id*. at 770-71. First, the court acknowledged that the

percentage of alcohol in the blood begins to drop after a person stops drinking because the body eliminates it from the system (thus causing the destruction evidence). *Id.* Second, there was already a delay in taking the accused to the hospital because the officer had to investigate the scene of the accident where the accused was found. *Id.* Finally, the Court states that there was no time to seek out a magistrate and secure a warrant. *Id.* Noting these "special facts" the court agreed the involuntary blood draw was appropriate. *Id.*

The court revisited the involuntary blood draw issue in *Missouri v. McNeely* where the State of Missouri contended that the singular fact that alcohol dissipates from the body was sufficient by itself to create an exigent circumstance justifying a warrantless seizure of a defendant's blood. 133 S.Ct. at 1560. A plurality of the court disagreed. It rejected a *per se* rule, instead reaffirming that whether the exigent circumstances exception is met must be judged on the totality of circumstances on a case by case basis. *Id.* at 1561. The court also explicitly stated that a warrantless blood draw must fall under one of the recognized exceptions to the Fourth Amendment. *Id.* at 1558.

The Texas courts of appeals grappled with whether *Missouri v. McNeely* invalidated non-consensual blood draws taken under the Texas Transportation Code. The Code mandates blood draws when an officer arrests a person for DWI and the person is either involved in an accident involving serious injury or death, or that person has two or more prior convictions for DWI. TEX.TRANSP.CODE ANN. § 724.012(b).[2] The courts of appeals have uniformly rejected the

---

[2] Germane to this case, Section 724.012(b) provides:

(b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle...and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

. . .

(3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

. . .

4

State's various arguments attempting to distinguish *McNeely* or apply other exceptions to work around it. *See Aviles v. State*, 443 S.W.3d 291 (Tex.App.--San Antonio, 2014, pet. filed); *Sutherland v. State,* 436 S.W.3d 28 (Tex.App.--Amarillo 2014, pet. filed); *Douds v. State*, 434 S.W.3d 842 (Tex.App.--Houston [14th Dist.] 2014, pet. granted); *Weems v. State*, 434 S.W.3d 655 (Tex.App.--San Antonio 2014, pet. granted); *Holidy v. State,* No. 06-13-00261-CR, 2014 WL 1722171 (Tex.App.--Texarkana Apr. 30, 2014, pet. granted)(mem. op., not designated for publication).[3]

Any remaining doubt about these issues was resolved by the Texas Court of Criminal Appeals decision in *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex.Crim.App. Nov. 26, 2014, pet. granted). In *Villarreal*, an officer initiated a traffic stop and in questioning the driver, found him to have slurred speech, red, watery eyes, and the strong smell of alcohol. *Id*. at \*1. The driver refused to take the standard field sobriety tests. *Id*. When a background check showed the driver had several prior DWI convictions, the arresting officer took the driver to a hospital for a blood draw, despite the driver's non-consent. *Id*. at \*2. The officer viewed the Transportation Code as mandating the blood draw, and while he "could have" obtained a warrant, he believed that the statute made a warrant unnecessary. *Id*. We view these facts as indistinguishable from Appellant's situation.

The trial court in *Villarreal* held the blood draw improper. *Id*. at \*3. The court of appeals affirmed and the Texas Court of Criminal Appeals squarely confronted the State's implied consent argument under the Transportation Code. *Id*. at \*6. It also addressed the State's

---

(B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [misdemeanor DWI] . . . .

[3] We note that the trial court here heard the motion to suppress on May 31, 2013 which was little more than a month after *McNeely* was handed down, and the trial court did not have the benefit of any of the recent cases construing *McNeely* and the Transportation Code.

alternative arguments that the automobile, search incident to arrest, and special needs exceptions to the Fourth Amendment applied. *Id*. at \*14-15. Lastly the court addressed the State's claim that a general Fourth Amendment balancing test could justify the involuntary blood draw. *Id*. at \*16. The Court rejected each of the State's proffered basis for the blood draw, concluding:

> We hold that the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement. We thus reject the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions can fall under one of the established exceptions to the warrant requirement described above, and we further reject the State's suggestion that such a search may be upheld under a general Fourth Amendment balancing test.

*Id*. at \*20.

The only distinguishing feature between *Villarreal* and this case is that in *Villarreal* the trial court granted the motion to suppress and here the trial court denied it. Under the applicable standard of review, we do afford almost total deference to the trial court's determination of the historical facts that the record supports. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). When the trial court is not asked to make findings of fact and conclusions of law, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App. 2000). We also afford the same amount of deference to a trial courts' rulings on the application of the law to the facts-- so called mixed questions of law and fact--if resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. But we review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* In *Villarreal*, for instance, the Court of Criminal Appeals noted that it reviewed the trial court's ruling *de novo* because the underlying facts were not disputed. 2014 WL 6734178 at \*10.

In this case, there are also no disputed facts, at least none that would implicate any of the

6

Fourth Amendment exceptions raised by the State. Each of the exceptions to the Fourth Amendment that the State urges in this case were expressly rejected by the Texas Court of Criminal Appeals in *Villarreal*.[4] Only the exigent circumstances exception was not at issue in *Villarreal,* 2014 WL 6734178 *9. But none of the facts in this record supports the kind of exigent circumstances that the U.S. Supreme Court found sufficient in *Schrimer*. Appellant was detained in a traffic stop and not an accident as in *Schrimer*. He was transported to a hospital less than two hours later for the blood draw. There was no indication that a magistrate judge was not available to issue a warrant had Officer Reyes pursued one.

We also note that following *Villarreal*, the Fort Worth Court of Appeals decided *Burks v. State*, 454 S.W.3d 705 (Tex.App.--Fort Worth 2015, pet. filed) which overturned a trial court's denial of a motion to suppress. The defendant in that case, as here, was pulled over for a traffic violation, found to have overt signs of intoxication, and was taken for an involuntary blood draw because he had two or more prior convictions for DWI. *Id*. at 707. The officer believed the implied consent provisions of the Transportation Code permitted the blood draw. *Id*. Based on *Villarreal*, the Fort Worth Court reversed the trial court order denying the motion to suppress and the conviction. *Id*. at 708. *Burks* is particularly instructive to us because in this transferred case, we are bound to follow the precedents of the transferring court of appeals. *See* TEX.R.APP.P. 41.3.

We accordingly sustain Appellant's single issue and we reverse the trial court's order denying Appellant's motion to suppress and the trial court's judgment of conviction, and remand the case to the trial court for further proceedings consistent with this opinion.

---

[4] One exception urged here, the "cumulative, non-dualistic approach to exceptions and reasonableness" appears to us to be the same "general Forth Amendment balancing test" rejected by the Court of Criminal Appeals in *Villarreal*. To the extent it is meant to be something different, the State's one page presentation of that argument here cites no cases establishing it as distinct exception under the Fourth Amendment. All of the other exceptions advanced by the State are identically worded to those expressly rejected in *Villarreal*.

7

May 14, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)