

# NUMBER 13-14-00289-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,** **Appellant,**

**v.**

**RAUL FERNANDO MONTES DE OCA,** **Appellee.**

## On appeal from the 445th District Court
## of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

This in an interlocutory appeal in a case involving a blood draw pursuant to section 724.012 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.012 (West, Westlaw through Ch. 49, 2015 R.S.). The trial court granted a motion to suppress filed by appellee Raul Fernando Montes de Oca. The State appeals the trial court's ruling by two issues. We affirm.

# I.    BACKGROUND

On the morning of December 22, 2013, shortly after 7:00 a.m., Montes de Oca allegedly caused a traffic accident when his vehicle struck a Ford F-150 driven by Gloria Hill.[1]   Montes de Oca, his passenger, and Hill were taken to the hospital for treatment of injuries sustained in the accident.[2]   Brownsville police officers Mario Fuentes and Edgar Aguilar were dispatched to Valley Regional Hospital to "keep an eye" on the suspects. Fuentes testified that upon arrival at the hospital he noted that Montes de Oca smelled strongly of alcohol and that his demeanor showed signs of intoxication.  Officer Saul Dominguez of the Brownsville Police Department joined Fuentes and Aguilar at the hospital.  Dominguez was one of the first responders at the scene of the accident and continued his investigation at the hospital to determine if alcohol was a factor in causing the accident.

After speaking with Detective Rudy Tedullo, Dominguez decided that he was statutorily required to perform a mandatory blood draw.  According to Dominguez, Montes de Oca became combative when he learned that the officers intended to perform a mandatory blood draw.  A fight in the hospital room ensued, and the three officers present subdued Montes de Oca and restrained him to the hospital bed where he was sedated.  Montes de Oca was then placed under arrest.  While Montes de Oca was restrained and sedated, the medical personnel were able to draw his blood for testing. Dominguez testified that the blood draw took place between 9:00 and 10:00 a.m. Sunday

---

[1] Montes de Oca denied that he was the driver of the vehicle.

[2] Hill was taken to Valley Baptist Hospital for treatment while Montes de Oca and his passenger were transported to Valley Regional Hospital.

2

morning. The State does not dispute that Montes de Oca did not consent to have his blood drawn: Montes de Oca fought three officers and had to be restrained and sedated before a nurse could perform the blood draw.

Dominguez did not obtain a search warrant to collect Montes de Oca's blood sample. Instead, Dominguez relied solely on Texas Transportation Code section 724.012(b)(1). He testified that he interpreted the statutory provision to mean that he was required to collect a mandatory blood sample because Montes do Oca had been arrested for a suspected alcohol-related offense involving a traffic accident in which two other individuals were taken to the hospital. Officer Dominguez testified that he could have obtained a warrant, but that he felt a warrant was not necessary under the circumstances.

At the hearing on the motion to suppress, Montes de Oca called Guadalupe Mata, the Magistrate Clerk of the Municipal Court in the City of Brownsville, to testify. She testified that the City has several magistrates available seven days a week who hold court every day and are available on an on-call basis. Mata testified that on Sunday, December 22, 2013, Judge Rene DeCoss was on duty and would have been available to consider an application for a blood draw warrant.

Montes de Oca was indicted on two counts of intoxication assault causing serious bodily injury pursuant to section 49.07(c) of the Texas Penal Code—both counts were third-degree felony offenses. Montes de Oca filed a motion to suppress evidence from the blood draw, claiming the warrantless blood draw over his refusal violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States

Constitution. The trial court found that the blood draw was done without Montes de Oca's consent, without a warrant, and without a showing of exigent circumstances and granted Montes de Oca's motion to suppress. The State filed this interlocutory appeal challenging the trial court's ruling.

## II. TEXAS TRANSPORTATION CODE SECTION 724.012(B)

By two issues, which we address as one, the State asserts that the trial court erred by failing to hold that the warrantless blood draw was lawful under the "implied-consent mandatory blood draw provision" of the Texas Transportation Code. The State urges this Court to reconsider our opinion in *State v. Villarreal.* No. 13-13-00253-CR, __S.W.3d__, 2014 WL 1257150 (Tex. App.—Corpus Christi 2014), *aff'd by* No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014, reh'g granted).[3] In the alternative, the State contends that exigent circumstances existed such that the warrantless blood draw was a reasonable search under the Fourth Amendment.

### A. Standard of Review

"We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion." *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We give the trial court's determination of historical facts almost total deference and review de novo the trial court's application of the law pertaining to the search. *Id.* In a motion to suppress hearing, the trial court is the sole trier of fact: it judges the witnesses' credibility and determines the weight to give their testimony. *See State v. Ross,* 32 S.W.3d 853,

---

[3] We note that the State filed its briefing before the Texas Court of Criminal Appeals affirmed our decision in *State v. Villarreal. See State v. Villarreal,* No. PD-0306-14, 2014 WL 6734178, at *21 (Tex. Crim. App. Nov. 26, 2014, reh'g granted). Though the court of criminal appeals has granted rehearing, it has not vacated its November 26, 2014 ruling affirming our decision. *Id.*

4

856 (Tex. Crim. App. 2000). "When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We uphold the trial court's ruling under any applicable theory of law that is supported by the facts of the case. *Alford v. State,* 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). However, we do not defer to the trial court's "conclusions of law" in performing our de novo review. *Id.*

**B.    Applicable Law**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend IV. The Supreme Court has recognized "[t]he security of one's privacy against arbitrary intrusion by the police as being at the core of the Fourth Amendment and basic to a free society." *Schmerber v. California,* 384 U.S. 757, 767 (1966). However, the Constitution does not prevent all searches and seizures—only unreasonable ones. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968).

The Supreme Court has recognized that drawing a suspect's blood constitutes a "search" under the Fourth Amendment. *Missouri v. McNeely,* __U.S.__, 133 S.Ct. 1552, 1558 (2013). Even in the context of a blood draw, the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. *Schmerber,* 384 U.S. at 768. As such, a blood draw is appropriate when performed in compliance with the requirements of the Fourth Amendment—the State needs either a

5

lawfully obtained warrant or an applicable exception to the warrant requirement. *See McNeely,* 133 S.Ct. 1568. Searches conducted pursuant to a warrant rarely require a deep inquiry into reasonableness. *Beeman v. State,* 86 S.W.3d 613, 615 (Tex. Crim. App. 2002) (recognizing the constitutionality of blood draws performed pursuant to a valid warrant). However, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely,* 133 S.Ct. at 1563 (recognizing that a warrantless search of the person is reasonable only if it falls within a recognized exception to the warrant requirement based on the totality of the circumstances).

In Texas, chapter 724 of the transportation code works to create "implied consent" for those who choose to operate a vehicle on Texas roadways. *See* TEX. TRANSP. CODE ANN. § 724.011 (West, Westlaw through Ch. 49, 2015 R.S.) (noting that a person is "deemed to have consented . . . to submit to the taking of one or more specimens of the person's breath or blood" if arrested for an offense involving the operation of a vehicle in a public place). Section 724.012(b) of the implied consent chapter directs that officers *shall* perform either a blood draw or a breathalyzer test in certain limited circumstances. *Id.* at § 724.012(b) (emphasis added). The statute lists, as an instance necessitating a blood draw, a circumstance where an individual is arrested for a driving-related intoxication offense and in which an individual (other than the driver) is seriously injured or hospitalized. *Id.* at § 724.012(b)(1)(C). It has been argued that the statute mandating a blood draw provides statutorily implied consent—negating the need to obtain a warrant. *See Aviles v. State,* 385 S.W.3d 110, 115 (Tex. App.—San Antonio 2012,

6

pet. ref'd), *vacated,* __U.S.__, 134 S.Ct. 902 (2014).[4]

Texas police officers, trial courts, and appellate courts have addressed the issue of a mandatory blood draw based on statutorily applied consent to differing results. *Compare Villarreal,* 2014 WL 1257150, at *11 *with Aviles,* 385 S.W.3d at 115. However, the appellate courts have uniformly rejected the State's attempts to circumvent the warrant requirement of the Fourth Amendment. *See Burcie v. State,* No. 08-13-00212-CR, 2015 WL 2342876, at *2 (Tex. App.—El Paso May 14, 2015, no pet. h.) (mem. op., not designated for publication); *Aviles v. State,* 443 S.W.3d 291, 293–94 (Tex. App.—San Antonio 2014, pet. filed) (holding on remand that the transportation code did not create an exception to the warrant requirement); *Sutherland v. State,* 436 S.W.3d 28, 41 (Tex. App.—Amarillo 2014, pet. filed); *Douds v. State,* 434 S.W.3d 842, 859–60 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) ("The mandatory blood draw statue cannot—and does not purport to—alter the Fourth Amendment warrant requirement or its recognized exceptions."); *see also State v. Rodriguez,* No. 13-13-00335-CR, 2015 WL 3799535, at *4 (Tex. App.—Corpus Christi Jun. 18, 2015, no pet. h.) (mem. op., not designated for publication); *Holidy v. State,* No. 06-13-00261-CR, 2014 WL 1722171, *4 (Tex. App.—Texarkana Apr. 30, 2014, pet. granted) (mem. op., not designated for publication).

The Texas Court of Criminal Appeals affirmed *Villarreal.* 2014 WL 6734178, at *21. This Court, in *Villarreal,* analyzed the constitutionality of a warrantless blood draw

---

[4] Though the *Aviles* court determined that chapter 724 of the transportation code provided statutorily implied consent in the limited circumstances defined by statute, the United States Supreme Court vacated and remanded *Aviles* for reconsideration in light of *McNeely.* *See Aviles v. Texas,* 134 S.Ct. 902 (2014).

pursuant to section 724.012(b)(3)(b) and determined that the statute did not "address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws."[5] 2014 WL 1257150, at *11. As such, acting pursuant to the mandatory provisions of section 724.012(b), officers are still required to obtain a search warrant or establish an exception to the warrant requirement. *Id.* Our holding in *Villarreal* is consistent with the Texas Court of Criminal Appeals' holding in *Beeman,* in which it noted that the statute does not give police officers anything "more than the Constitution already gives them." 86 S.W.3d at 616 (noting that the statute "gives officers the ability to present an affidavit to a magistrate in every DWI case, . . . Whether any search ultimately occurs rests, as always, in the hands of the neutral and detached magistrate.").

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct." *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This burden is satisfied if the defendant establishes that the search or seizure occurred without a warrant. *Id.* In the context of a blood draw, the defendant must also produce evidence to support a finding that he did not consent. *Kelly,* 204 S.W.3d at 819 n.22. Once these facts are established, the burden shifts to the State to prove the warrantless search was reasonable under the totality of the circumstances. *Amador v. State*, 221 S.W.3d 666 672–73 (Tex. Crim. App. 2007). The State satisfies this burden if it proves an exception

---

[5] The Texas Court of Criminal Appeals affirmed *Villarreal,* holding that section 724.012(b) did not do away with the warrant requirements of the Fourth Amendment. No. PD-0306-14, 2014 WL 6734178, at *21 (Tex. Crim. App. Nov. 26, 2014, reh'g granted). While *Villarreal* remains controlling precedent, we note that rehearing has been granted. However, the court of criminal appeals has not vacated its ruling affirming our decision. Accordingly, until the rehearing is resolved, we review this issue by applying the law that is before us.

8

to the warrant requirement.   *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

**C.    Discussion**

Because Montes de Oca met the initial burden of production to establish (1) that there was no warrant, and (2) that there was no consent, the State bore the burden of proof before the trial court at the hearing on the motion to suppress.   *See Kelly,* 204 S.W.3d at 818.   The State was required to prove that the search was reasonable under the Fourth Amendment.   *See McNeely,* 133 S.Ct. at 1568; *Gutierrez,* 221 S.W3d at 685.

The State argued before the trial court that the warrantless blood draw was reasonable because Dominguez complied with the statutory requirements of section 724.012(b).[6]   However, the Texas Court of Criminal Appeals held in *Villarreal* that "the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement" and "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement violates the Fourth Amendment."   2014 WL 6734178, at *20–21.   Accordingly, because acting pursuant to the mandatory provisions of section 724.012 of the transportation code does not do away with the warrant requirement, we conclude that the State failed to establish, through this argument, an exception to render the warrantless blood draw reasonable.   *See id.;*

---

[6] We note that Dominguez testified that he did not read Montes de Oca the statutorily required DIC-24 warning before drawing his blood.   The DIC–24 states, "If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution. Your license, permit, or privilege to operate a motor vehicle will be suspended or denied for not less than ninety (90) days if you are 21 years old or older...."

9

*Villarreal,* 2014 WL 6734178, at *21; *see also Rodriguez,* 2015 WL 3799535, at *4.

On appeal, the State argues that the exigent circumstances exception applied to the warrantless search in question. Here, the officers' testimony shows that there was no exigency that prevented them from applying for, or obtaining, a search warrant. The Supreme Court has recognized exceptions to the warrant requirement in cases involving consent and when there are exigent circumstances. *See Steagald v. U.S.,* 451 U.S. 204, 216 (1981); *Smith v. State,* No. 13-11-00694-CR, __S.W.3d__, 2014 WL 5901759, *3–4 (Tex. App.—Corpus Christi Nov. 13, 2014, pet. granted). Exigency is an established exception to the warrant requirement and "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S.Ct. at 1558 (quoting *Kentucky v. King*, __U.S.__, 131 S.Ct. 1849, 1856 (2011)). Additionally, for exigent circumstances to justify a warrantless search there must also be "no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509 (1978) (holding that "a burning building clearly presents an exigency of sufficient proportions to render a warrantless entry reasonable"). We must look to the totality of the circumstances to determine if the warrantless search was permissible due to an exigency. *McNeely,* 133 S.Ct. at 1559.

Dominguez's testimony before the trial court forecloses a finding of exigency: Dominguez testified that he made no effort to obtain a warrant, that he could have obtained a warrant had he applied for one, and that the reason he did not apply for a warrant was because he did not believe one was needed. *See McNeely*, 133 S.Ct. at 1558; *King,* 131 S.Ct. at 1856; *Tyler,* 436 U.S. at 509. Mata's subsequent testimony that

a magistrate judge was on duty and available to process requests for warrants further defeats the State's argument.   *See Tyler,* 436 U.S. at 509.

Pursuant to the Supreme Court's holding in *McNeely* declining to extend a *per se* determination of exigency in cases involving blood draws, we conclude that the State did not put on any evidence of exigent circumstances to establish an exception to the warrant requirement of the Fourth Amendment.[7]   133 S.Ct. at 1568.

We overrule issues one and two.

### IV.   CONCLUSION

We affirm the ruling of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.

---

[7] The State made the argument that Montes de Oca's combative behavior at the hospital created an exigent circumstance because of difficulty the officers had subduing him.   We note that the State raised this argument for the first time on appeal and therefore did not preserve the argument for our review.   *See* TEX. R. APP. P. 33.1; *Martinez v. State,* 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) (noting that we may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case but was not raised).