**Majority and Dissenting Panel Opinions of October 15, 2013 Withdrawn; Reversed and Remanded and En Banc Majority, Concurring, and Dissenting Opinions filed June 5, 2014.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-12-00642-CR

---

### KENNETH LEE DOUDS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Court at Law No. 1 & Probate Court
Brazoria County, Texas
Trial Court Cause No. 180270**

---

## E N   B A N C   O P I N I O N

Appellant Kenneth Lee Douds was charged with driving while intoxicated. After the trial court denied appellant's motion to suppress his blood specimen drawn without a warrant and the results of a blood alcohol test of the specimen, he pleaded guilty to a reduced charge as part of a plea agreement. In this appeal, he challenges the suppression ruling on both statutory and constitutional grounds.

Having granted appellant's motion for reconsideration en banc, we hold that the taking of appellant's blood was an unreasonable warrantless seizure in violation of the Fourth Amendment. We therefore reverse the judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

On May 16, 2010, Officer Andre Tran of the Pearland Police Department responded to a call regarding a car accident that had been reported at 2:33 a.m. Two cars were involved in the accident, and the occupants of both cars were friends. The appellant and his wife were in one car, and appellant was driving when he failed to stop and struck the other car from behind. Officer Timothy Niemeyer and Pearland Emergency Medical Services (EMS) were already at the scene when Officer Tran arrived at 2:36 a.m. and began investigating the crash.

Officer Niemeyer had called Pearland EMS to address injuries at the scene. Appellant's wife complained of chest and rib pain and said she could not move her right arm, but she refused to be taken to the hospital by Pearland EMS. Video from the dashboard camera of Officer Tran's police car indicates that Pearland EMS left the scene at 2:54 a.m. Officer Tran suggested to the driver of the other car that appellant's wife needed to be checked out and possibly have some X-rays taken. The driver replied "we're taking her," which Officer Tran testified he understood to mean she would be taking appellant's wife to a hospital or emergency center.

After conducting field sobriety tests, which reinforced his initial suspicion that appellant was intoxicated, Officer Tran placed appellant under arrest at 3:19 a.m.[1] The dashboard camera video indicates that Officer Tran and appellant left

---

[1] The DWI Case Report lists the time of arrest as 3:19 a.m., but the dashboard camera video indicates that the arrest occurred at 3:14 a.m.

2

the scene at 3:29 and arrived at the Pearland Police Department at 3:33 a.m. One of the other officers stayed at the scene to inventory appellant's vehicle and handle towing.[2]

At the police department, Officer Tran read a statutory warning to appellant regarding his ability to refuse to supply a breath sample voluntarily. The DWI Specimen Report reflects that Officer Tran delivered the warning at 3:45 a.m. When Officer Tran requested a breath sample, the appellant refused to consent. At that point, "based on the total circumstances" and his belief that appellant's wife was hurt and needed medical attention, Officer Tran took the appellant to a local medical center, Texas Emergency Care, for a mandatory blood draw. Officer Tran testified his decision to obtain a blood draw was based on his reasonable belief that section 724.012 of the Texas Transportation Code had been satisfied and allowed him to do so.

The DWI Specimen Report lists the time of extraction as 4:45 a.m.—one hour after Officer Tran delivered the statutory warning, 76 minutes after the pair left the scene of the accident, at least 86 minutes after Officer Tran arrested appellant, and more than two hours after officers arrived at the scene. Nothing in the record suggests that any officer attempted to obtain a warrant authorizing the blood draw at any point. Indeed, the evidence does not mention a warrant at all.

Appellant was charged by information with Class A misdemeanor driving while intoxicated. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(a) (West Supp. 2013). Appellant filed a motion to suppress the specimen taken during the mandatory blood draw and the results of a blood alcohol test of the specimen.

---

[2] During the suppression hearing, Officer Tran testified that he thought "two [other] officers showed up," but Officer Niemeyer is the only officer listed in the "other officer information" section of the DWI Case Report. The report lists Officer Niemeyer as "assist[ing] with maintain[ing] scene control and vehicle inventory for towing."

After holding an evidentiary hearing and considering briefing by both parties, the trial court signed an order denying appellant's motion to suppress. Appellant then pleaded guilty to a Class B misdemeanor as part of a plea agreement, and the trial court certified his right to appeal. In this appeal, appellant challenges the trial court's denial of his motion to suppress, contending that the court's ruling was erroneous on both statutory and constitutional grounds.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the testimony presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). When, as here, there are no explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling, assuming that the trial court made implicit findings of fact supported in the record that buttress its ruling. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000). We will uphold the court's ruling if it is correct under any theory of law applicable to the case. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

Although we "give almost total deference to [the] trial court's express or implied determination of historical facts," we "review de novo the court's application of the law of search and seizure to those facts." *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). To be sure, the reasonableness of a seizure is a fact-sensitive inquiry, but it is "ultimately a question of substantive Fourth Amendment law." *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Therefore, we assume the trial court made findings of historical fact

4

favorable to its ruling, but whether those facts amount to a reasonable seizure is a question of law that we review *de novo*. *See id.*

## ANALYSIS

**I.    The record supports the trial court's implied finding that the statutory requirements for a mandatory blood draw were met.**

In his first issue, appellant contends the trial court should have granted his motion to suppress because Officer Tran did not have statutory authority to require the taking of a blood specimen. Officer Tran testified that he ordered the mandatory blood draw under the authority of section 724.012 of the Texas Transportation Code. In relevant part, that section provides:

> (b)  A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for [driving while intoxicated] and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> > (1)  the person was the operator of a motor vehicle or watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:
>
> > *    *    *
>
> > (C)  an individual other than the person has suffered bodily injury and has been transported to a hospital or other medical facility for medical treatment.

Tex. Transp. Code Ann. § 724.012(b) (West 2011).

Appellant argues that the evidence provides no "support for the possible assertion that anyone had 'been transported to a hospital or [other] medical facility for medical treatment.'" This argument misstates the statutory requirement. The Transportation Code does not require that someone actually be transported to a

5

medical facility for medical treatment; rather, it requires that the police officer ordering the mandatory blood draw reasonably believe that an injured individual has been transported to a medical facility for medical treatment. *See id.*; *see also Mitchell v. State*, 821 S.W.2d 420, 424–25 (Tex. App.—Austin 1991, pet. ref'd) (construing predecessor of section 724.012 to authorize involuntary blood sample, although accident victim survived, because officer could reasonably have believed victim "was likely to die"). Therefore, the key issue is whether Officer Tran reasonably believed that appellant's wife had been transported to a medical facility for treatment.

An officer's reasonable beliefs are issues of fact. *See, e.g.*, *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008) (identifying whether officer reasonably believed defendant was holding a garden hoe, was involved in a disturbance, and was running away as questions of fact); *Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987) ("Whether the appellant's beliefs were reasonable and justifiable . . . were fact questions . . . ."). Because the trial court denied appellant's motion to suppress, we assume that the trial court implicitly determined that Officer Tran possessed the reasonable belief required to support a mandatory blood draw as long as that determination is supported by the record. *See Ross*, 32 S.W.3d at 855.

Although there was evidence that appellant's wife and her friends intended to go at least initially to Santa Fe, when Officer Tran stated that appellant's wife was "not OK" and should get checked out and possibly have X-rays taken, the driver of the other vehicle replied "we're taking her." Officer Tran testified he understood this statement to mean the friends would be taking appellant's wife to a hospital or emergency center. This evidence supports a determination that Officer Tran reasonably believed appellant's wife had been transported to a medical

facility to treat her injuries.[3]  *See Wiede*, 214 S.W.3d at 25; *Ross*, 32 S.W.3d at 855.  Therefore, the trial court could conclude that section 724.012 required Officer Tran to obtain a breath or blood sample even though appellant refused to submit a sample voluntarily.  We overrule appellant's first issue.

## II.    The motion to suppress should have been granted because the State did not prove an exception to the Fourth Amendment rule that a warrantless search or seizure is *per se* unreasonable.

In his second issue, appellant argues that (1) section 724.012 is unconstitutional when employed to require a blood draw for a misdemeanor offense; and (2) the warrantless blood draw violated the Fourth Amendment because there were no exigent circumstances here.  Because we conclude the record does not support implied findings of historical facts that meet the legal standard of exigent circumstances, we hold that this warrantless blood draw violated the Fourth Amendment.  We therefore do not reach appellant's misdemeanor argument.

### A.    The Fourth Amendment requires prior judicial approval of a search or seizure unless the State proves a recognized exception.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue" unless they meet certain requirements.  U.S. Const. amend. IV; *see also* Tex. Const. art. I, § 9.  This right "proscribes all unreasonable searches and seizures," *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012), and its "basic purpose . . . is to safeguard the privacy and security of individuals against arbitrary invasion by

---

[3] With respect to the timing of Officer Tran's belief, appellant argues only that there is no evidence he believed appellant's wife had been transported to a medical facility "at the time of his demand for warrantless seizure."  We limit our analysis accordingly.

government officials." *Haynes v. State*, 475 S.W.2d 739, 741 (Tex. Crim. App. 1971).

"Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, [the Supreme Court of the United States] has inferred that a warrant must generally be secured." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). Thus, "it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *Gonzales*, 369 S.W.3d at 854. "'Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police.'" *Bray v. State*, 597 S.W.2d 763, 765 n.1 (Tex. Crim. App. [Panel Op.] 1980) (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)). The warrant requirement has been described as one of "the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." *Johnson v. United States*, 333 U.S. 10, 17 (1948).[4]

---

[4] Judicial issuance of a warrant is important because it "provides . . . a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *Hudson v. State*, 588 S.W.2d 348, 351 (Tex. Crim. App. 1979) (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1976) (internal quotation marks omitted)). A neutral magistrate's prior review "prevent[s] hindsight from coloring the evaluation of the reasonableness of a search or seizure." *United States v. Martinez-Fuerte*, 428 U.S. 543, 565 (1976); *see also Beck v. Ohio*, 379 U.S. 89, 96 (1964) ("An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure on an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment."); *Clay v. State*, 391 S.W.3d 94, 100 n.21 (Tex. Crim. App. 2013) ("'[O]ne important function of the warrant requirement is to facilitate review of probable cause and avoid justification for a search . . . by facts or evidence turned up in the course of [its] execution.'" (quoting Wayne R. LaFave, 2 Search and Seizure: A Treatise on the Fourth Amendment § 4.3(b), at 511 (4th ed. 2004)).

"The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn . . . ." *Jones v. United States*, 357 U.S. 493, 499 (1958). Those exceptions include "voluntary consent to search, search under exigent circumstances, and search incident to arrest." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). It is the State's burden to show that a warrantless search falls within one of these exceptions. *Id.* For example, a warrantless seizure of a blood sample can be constitutionally permissible if the State proves that "officers have probable cause to arrest a suspect, exigent circumstances exist, and a reasonable method of extraction is available." *State v. Mosely*, 348 S.W.3d 435, 440 (Tex. App.—Austin 2011, pet. ref'd). On this record, the State has not carried its burden as we explain below.

**B.      Appellant preserved his Fourth Amendment challenge and shifted the burden to the State to prove an exception to the warrant requirement.**

On rehearing, the State argues we should not reach appellant's Fourth Amendment challenge because it was not preserved. We disagree.

"A defendant who alleges a Fourth Amendment violation has the burden of producing evidence that rebuts the presumption of proper police conduct. He may carry this burden by establishing that the seizure occurred without a warrant." *State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex. Crim. App. 2011) (footnotes omitted); *see also id.* at 780 (Cochran, J., concurring); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The burden then shifts to the State to prove the seizure was nonetheless reasonable. *Id.*; *Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007).[5]

---

[5] *See also State v. Betts*, 397 S.W.3d 198, 207 (Tex. Crim. App. 2013) ("Once [the defendant] established standing . . . and that the search was conducted without a warrant, he satisfied his burden of establishing his Fourth Amendment claim, and the burden shifted to the

In this case, both in the trial court and on appeal, appellant alleged a Fourth Amendment violation and pointed out the undisputed lack of a warrant. It then became the State's burden to argue and prove an exception to the warrant requirement, not—as the State argues—appellant's burden to address and negate the exigent circumstances exception. In fact, the State understood appellant was making a Fourth Amendment challenge and it argued exigent circumstances in its brief of appellee, relying on *Schmerber v. California*, 384 U.S. 757 (1966). We therefore hold appellant adequately preserved his Fourth Amendment challenge, and we turn to the question whether the State carried its burden to prove that the exigent circumstances exception applies here.

### C. The State has not demonstrated that exigent circumstances made obtaining a warrant impractical.

"'We cannot . . . excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.'" *Bray*, 597 S.W.2d at 765 n.1 (quoting *McDonald*, 335 U.S. at 456). Exigent circumstances typically fall within one or more of three categories: (1) "providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance;" (2) "protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous;" and (3) "preventing the destruction of evidence or contraband." *Gutierrez*, 221 S.W.3d at 685. The State urges that this case falls within the third category.

The dissenting opinion—but not the State—argues that we should also consider the first category. While we agree with our dissenting colleagues that

---

State to establish an exception to the warrant requirement."); *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) ("[T]he warrant requirement is not lightly set aside, and the State shoulders the burden to prove that an exception to the warrant requirement applies.").

10

more than one category may be implicated in certain cases, we conclude that the first category is not implicated here. That category permits warrantless police action where "the officer has an immediate, reasonable belief that he or she must act 'to protect or preserve life or avoid serious injury.'" *Laney v. State*, 117 S.W.3d 854, 861 (Tex. Crim. App. 2003) (quoting *Mincey*, 437 U.S. at 392); *see also Stewart v. State*, 681 S.W.2d 774, 777 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (*en banc*). Moreover, the search must be "strictly circumscribed by the exigencies which justified its initiation." *Laney*, 117 S.W.3d at 863 (quoting *Mincey*, 437 U.S. at 393).

These requirements were met in *Laney* because a deputy searched the appellant's home with the reasonable belief that he needed to act to protect a child inside, and he discovered illegal pornographic materials in plain view in the room where the child was located. *Id.*; *cf. Bass v. State*, 732 S.W.2d 632, 635 (Tex. Crim. App. 1987) (holding detective's search of drawer in home of missing appellant was not strictly circumscribed by the exigency because it "exceed[ed] the permissible scope of a search for appellant's body or signs of foul play" and thereby "rendered an initially good search bad"). In this case, however, nothing in the record indicates that appellant's blood was seized in the course of protecting life or providing needed aid. Accordingly, we analyze this case under the third category: preventing destruction of evidence.

### 1. There is no *per se* rule that the dissipation of alcohol in the bloodstream is an exigent circumstance.

"[T]he need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search." *King*, 131 S. Ct. at 1856 (internal quotation marks omitted). Courts have therefore held that permitting a search "without prior judicial evaluation" is reasonable "[w]here there

11

are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime." *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973).

In its brief of appellee, the State argued that the exigent circumstances exception had been met here because "the need to quickly obtain a blood sample is great. The alcohol in a person's blood quickly dissipates and unless this evidence is obtained immediately, it is lost forever." But in a decision handed down after the State filed its brief, the Supreme Court of the United States rejected this very argument that "the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk driving cases." *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013).[6] Instead, "exigency in this context must be determined case by case based on the totality of the circumstances." *Id.* Thus, the court observed that "[i]n finding the warrantless blood test reasonable in *Schmerber*, we considered all of the facts and circumstances of that particular case and carefully based our holding on those specific facts." *Id.* at 1560.

*McNeely* also sheds light on particular facts that may be pertinent to the case-by-case inquiry. The Supreme Court agreed that metabolization of alcohol is one factor to consider: "[B]ecause an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." *Id.* at 1561. But the Court also recognized that

---

[6] Prior to *McNeely*, some Texas courts appear to have agreed with the State's argument here and adopted the very *per se* rule that *McNeely* rejects. *E.g. Blumenstetter v. State*, 135 S.W.3d 234, 243 (Tex. App.—Texarkana 2004, no pet.) ("[E]xigent circumstances exist in cases such as these because alcohol in blood is quickly consumed and the evidence may be lost forever."); *State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2003, pet. ref'd) ("It is a well-settled fact that alcohol in the blood dissipates quickly constitut[ing] exigent circumstances."); *Hayes v. State*, 634 S.W.2d 359, 363 (Tex. App.—Amarillo 1982, no pet.).

12

"because a police officer must typically transport a drunk-driving suspect to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood test, some delay between the time of the arrest or accident and the time of the test is inevitable regardless of whether police officers are required to obtain a warrant." *Id.* If the "warrant process will not significantly increase [this] delay . . . because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer," the court reasoned, "there would be no plausible justification for an exception to the warrant requirement." *Id.*

In addition, the Court noted "advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple." *McNeely*, 133 S. Ct. at 1561–62. The Court explained that "technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency," particularly given that blood alcohol evidence "is lost gradually and relatively predictably." *Id.* at 1562–63.[7]

Thus, in order to establish a plausible justification for an exigent circumstances exception to the warrant requirement, the State had the burden to show facts and circumstances beyond the passage of time and the resulting dissipation of alcohol in the bloodstream.

---

[7] *Cf. Clay*, 391 S.W.3d at 103–04 (Tex. Crim. App. 2013) (holding that affidavit faxed to magistrate and sworn to via telephone by affiant known to magistrate supported issuance of warrant).

## 2. There is no *per se* rule that the time taken to investigate an accident is an exigent circumstance.

On rehearing, the State shifts to arguing that under *Schmerber*, the time an officer takes to conduct an accident investigation in a suspected DWI case will provide exigent circumstances authorizing a blood draw without a warrant. For example, in its response to appellant's motion for *en banc* reconsideration, the State asserted that "[t]he necessity to investigate the accident together with the dissipation of alcohol from the blood provided exigent circumstances sufficient to justify a warrant[less] seizure of the Appellant's blood." Then, in oral argument, the State contended repeatedly that exigent circumstances existed because Officer Tran was "obviously investigating an accident," without identifying any unique features that distinguished this particular accident investigation from others. In particular, when asked how this Court could hold that "any time you have an accident investigation . . . that's an exigent circumstance," the State answered "I think it is an exigent circumstance. I think that's what was recognized in [*Schmerber*] that if you have an accident investigation it's going to take more time . . . ."[8] We conclude that neither *McNeely* nor *Schmerber* support such a *per se* rule.

The State and the dissenting opinion rely on certain non-dispositive similarities between the facts of this case and *Schmerber*, in which "time had to be taken to bring the accused to a hospital and to investigate the scene of the accident." 384 U.S. at 770–71. There are also key differences between the facts of this case and *Schmerber*, however, which we discuss below. The *McNeely* Court

---

[8] In response to subsequent questions from one of our dissenting colleagues, the State agreed that the Court did not have to address every possible accident scene and urged us to look at the circumstances of this individual case. But the State did not disavow its previous arguments that an accident investigation is an exigent circumstance. We address those arguments here and the circumstances of this individual case in Part II.C.3. below.

14

says *Schmerber* "fits comfortably within [its] case law," but it does so in emphasizing the importance of basing the exigency analysis on the specific "facts and circumstances of the particular case." *McNeely*, 133 S. Ct. at 1560.

What *McNeely* does not say is that if a case parallels *Schmerber* to the extent that it involves an accident investigation, a court may find exigent circumstances based on that fact alone. Yet under the State's proposed rule, it would carry its burden to show exigent circumstances justifying a warrantless blood draw any time it can claim some delay attendant to investigating an accident and dealing with any resulting injuries. The dissenting opinion proposes a variation of this rule that would have courts grade the severity of accidents, and our dissenting colleagues would find this accident exigent simply because it involved some investigatory and injury-related delay. *Post*, at 3, 12. These rules would apparently apply regardless of other facts and circumstances, such as how many officers and medical personnel are on the scene, what avenues might be available to the officers for processing warrant applications during the investigation, or how much delay occurred after the investigation was complete and before the blood was drawn.[9]

We reject the State's proposed *per se* rule for three reasons. First, it cannot be reconciled with the holdings of both *McNeely* and *Schmerber* that exigent circumstances must be determined using "careful case-by-case assessment." *McNeely*, 133 S. Ct. at 1561; *see also Schmerber*, 384 U.S. at 771–72 (focusing on "special facts" and limiting its holding to "the facts of the present record").

Second, the focus of exigent circumstances analysis in this context is not on the delay attendant to an investigation, where the State and the dissenting opinion

---

[9] We do not hold that the State must invariably present evidence of each or any of these facts. We merely note their potential relevance to whether "exigent circumstances justifying a warrantless blood sample [have arisen] in the regular course of law enforcement due to delays from the warrant application process." *McNeely*, 133 S. Ct. at 1563.

would place it, but on the delay necessary to obtain a warrant. As *Schmerber* makes clear, the State must prove that "the *delay necessary to obtain a warrant, under the circumstances*, threatened the destruction of evidence." 384 U.S. at 770 (internal quotation marks omitted, emphasis added). *Accord Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. App. 2013) (holding State has the burden to show that "exigent circumstances . . . made obtaining a warrant impracticable"); *Crane v. State*, 786 S.W.2d 338, 346 (Tex. Crim. App. 1990) ("In order for a warrantless arrest or search to be justified, the State must show . . . the existence of circumstances which made the procuring of a warrant impracticable.").

Agreeing with *Schmerber*, *McNeely* confirms the State must show that the time necessary to obtain a warrant under the circumstances threatened the destruction of blood alcohol evidence:

> In those drunk-driving investigations where police officers *can reasonably obtain a warrant* before a blood sample can be drawn *without significantly undermining the efficacy of the search*, the Fourth Amendment *mandates* that they do so. . . . We do not doubt that *some circumstances will make obtaining a warrant impractical* such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test. That, however, is a reason to decide each case on its facts, as we did in *Schmerber*, not to accept the considerable overgeneralization that a *per se* rule would reflect.

133 S. Ct. at 1561 (internal quotation marks omitted, emphasis added); *see also id.* at 1563 ("[E]xigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to *delays from the warrant application process*." (emphasis added)).

The dissenting opinion's proposal to have courts grade the severity of accidents likewise asks the wrong question. To ensure that the exigencies of the situation make dispensing with the constitutional requirement of a warrant

"imperative,"[10] courts must focus on whether the State showed that police could not reasonably obtain a warrant,[11] not on whether it showed how severe the accident was. This distinction is not merely a semantic one: the difference between the delay attendant to investigating an accident and addressing injuries and the delay necessary to obtain a warrant can be substantial depending on the facts of a particular case. Even if an officer's investigation of a "serious" accident lasts for an hour, the availability of another officer 15 minutes into the investigation, or the presence of medical personnel to treat injuries, could significantly reduce the delay necessary to obtain a warrant. Alternatively, if a lone officer discovers an apparently intoxicated driver during a midnight traffic stop not involving any accident, the delay necessary to obtain a warrant could be substantial if there is no magistrate available.

Moreover, making courts responsible for grading the severity of accidents would lead inevitably to inconsistent outcomes, as the dissenting opinion shows by lumping this accident "towards the middle" with *Schmerber*, in which a car struck a tree, breaking several of the driver's bones and forcing him on top of the passenger, who was knocked unconscious and pinned underneath the glove compartment.[12] Instead, the State should be responsible for asking officers who

---

[10] *Bray*, 597 S.W.2d at 765 n.1.

[11] *McNeely*, 133 S. Ct. at 1561; *Schmerber*, 384 U.S. at 770.

[12] *Post*, at 3; *cf.* Brief of Respondent, *Schmerber*, 384 U.S. 757 (No. 658), 1966 WL 100528, at *3–5; Brief of Petitioner, *Schmerber*, 1966 WL 100527, at *3. The dissenting opinion attempts to characterize this observation as a concession that the State is focusing on individual circumstances. But it is the dissenting opinion, not the State, that proposes to grade the severity of accidents. The dissent's inherently subjective accident-severity standard is wrong not because it fails to take account of any individual circumstances at all, but because it would produce inconsistent outcomes (in the sense that similar accidents may seem "exigent" to one court but not to another), it fails to focus on the delay necessary to obtain a warrant as required by Supreme Court precedent, and it ignores other facts and circumstances relevant to that delay (such as the number of medical personnel and officers on the scene and the options for obtaining a warrant).

17

handle accidents to explain the demands of a particular investigation that made it impractical for police to obtain a warrant before any blood alcohol evidence dissipated.

Third, the State's and dissent's proposed focus on the delay attendant to an investigation runs afoul of courts' long-held aversion to tests that allow law enforcement officers to "create the exigency," s*ee King*, 131 S. Ct. at 1858, as officers have complete control over whether and for how long to investigate an accident. The Supreme Court has held that an exigency analysis may not consider whether an investigation is "contrary to standard or good law enforcement practices (or to the policies or practices of their jurisdictions)," reasoning that "[t]his approach fails to provide clear guidance for law enforcement officers." *Id.* at 1861. Given this precedent, the State's and dissent's proposed rules would prevent courts from reviewing allegations that an investigation was drawn out unnecessarily to avoid obtaining a warrant.

For these reasons, we decline to adopt a *per se* rule that evidence of an accident investigation demonstrates exigent circumstances. Instead, we follow *McNeely* and *Schmerber* in determining exigency based on whether the specific "facts and circumstances of the particular case" made "obtaining a warrant impractical." *McNeely*, 133 S. Ct. at 1560–61; *Schmerber*, 384 U.S. at 770. The relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood alcohol test. *McNeely*, 133 S. Ct. at 1561; *Schmerber*, 384 U.S. at 770; *Parker v. State*, 206 S.W.3d 593, 600 (Tex. Crim. App. 2006) ("[T]he determination of whether an officer has probable cause and exigent circumstances to enter a person's home without a warrant is a factual

one based on the sum of all the information known to the officer at the time of entry."); *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998) ("We apply an objective standard of reasonableness in determining whether a warrantless search is justified, taking into account the facts and circumstances known to the police at the time of the search."); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind . . . .").

### 3. The State's evidence does not support an objectively reasonable conclusion that obtaining a warrant was impractical.

Applying this standard, we hold the State has not carried its burden to prove exigent circumstances here. As explained above, although all findings of historical fact supported by the record must be implied in favor of the trial court's ruling that the blood draw should not be suppressed, whether those facts meet the legal standard of exigent circumstances is a legal question that we review *de novo*. We conclude the findings that can be implied on this record do not support an objectively reasonable conclusion that taking the time to obtain a warrant before drawing appellant's blood would have significantly undermined the efficacy of a blood alcohol test.

Because the evidence in this case does not mention a warrant at all, there is nothing whatsoever in the record regarding what Officer Tran knew about the time needed to obtain a warrant. Thus, there are no facts to support a reasonable conclusion that it was impractical for the police to obtain a warrant between 2:36 a.m.—when at least two officers and EMS were on the scene of the accident—and 4:45 a.m. when appellant's blood was drawn. *See Weems v. State*, No. 04-13-00366-CR, slip op. at 15 (Tex. App.—San Antonio May 14, 2014, pet. filed) (concluding record did not reflect relevant factors such as procedures and

19

timeframe for obtaining warrant, and holding warrantless blood draw not justified by exigent circumstances); *Sutherland v. State*, No. 07-12-00289-CR, 2014 WL 1370118, at *10 (Tex. App.—Amarillo April 7, 2014, no pet. h.) (holding warrantless blood draw unreasonable where officer "did not describe any factors that would suggest he was confronted with an emergency or any unusual delay in securing a warrant"). Nor is there evidence that any "further delay in order to secure a warrant" beyond 4:45 a.m. "would have threatened the destruction of evidence" that "is lost gradually and relatively predictably." *McNeely*, 133 S. Ct. at 1561, 1563.

At most, the record can support an implied finding that Officer Tran was occupied with investigating appellant's intoxication and collecting evidence at the accident scene that needed to be preserved—and thus was unable to assist with obtaining a warrant—during much of the time between arriving at the scene at 2:36 and leaving at 3:29 a.m. As the dissenting opinion notes, the dashboard camera video indicates that Officer Tran also spent a few minutes at various times during this period "determining the condition of appellant's wife" who was being treated by EMS personnel, and "determining whether she needed to be and would be taken to the hospital" even though she had refused EMS transportation. *Post*, at 12, 16–18.[13] But this evidence does not address whether Officer Niemeyer at the scene, or other officers on duty that night, could have begun the process of obtaining a warrant as soon as Officer Tran's investigation revealed evidence that would

---

[13] It is not clear why the dissenting opinion places so much emphasis on these brief inquiries about the health of appellant's wife, especially in light of Officer Tran's explanation on the video that appellant's wife "not going to the hospital" presented a "problem" for his "mandatory blood draw from [appellant]." Because the inquiry before us is an objective one, we do not consider Officer Tran's subjective motivations for urging appellant's wife to seek emergency treatment. The dissenting opinion's reliance on these inquiries, however, does illustrate one of the problems with a rule that would allow police to create an exigency by prolonging an investigation unnecessarily.

support it.[14] *See McNeely*, 133 S. Ct. at 1561 (noting no warrant exception applies when, "between the time of the arrest or accident and the time of the test," an officer other than the one handling the suspect "can take steps to secure a warrant"); *cf. Wynn v. State*, 996 S.W.2d 324, 326 (Tex. App.—Fort Worth 1999, no pet.) ("Observations reported to the affiant by other officers engaged in the investigation can constitute a reliable basis for issuing a warrant."). The State, which bore the burden of proving exigency, elected not to introduce evidence on that issue.

Moreover, after the accident investigation was complete, the record reveals an unexplained delay that negates any possible inference that time was of the essence in obtaining a blood sample. The State relies on the 57 minutes that elapsed between Officer Tran's arrival at the accident scene and his arrival at the police station, arguing that the exigency of investigating the accident scene threatened the destruction of evidence. But 76 minutes—19 minutes longer than the delay the State contends was sufficient to threaten the destruction of evidence—elapsed between Officer Tran's departure from the accident scene and the blood draw. Although the record tells us Officer Tran read appellant the statutory warning at the police station at 3:45 a.m. and later took appellant to a local medical center for the blood draw, it does not explain why the stop at the police station was necessary, how the officer was occupied during the remainder of the time before appellant's blood was drawn, or why it was impractical to obtain a warrant during that time. *Cf. Hogan v. State*, 631 S.W.2d 159, 161 (Tex. Crim. App. 1982) (holding lapse of time showed there were no exigent circumstances when officers made no attempt to find out if a justice of the peace was available or

---

[14] Officer Tran testified that his initial observations indicated appellant was highly intoxicated, and the dashboard camera video shows that field sobriety tests were completed at 3:12 a.m.

to secure an arrest warrant and instead drove downtown, booked the complaining witness, and then took a dinner break).

It is possible Officer Tran may have made a judgment that taking the time necessary "to secure a warrant after the time spent investigating the scene of the accident . . . would have" delayed the blood draw past 4:45 a.m. and "threatened the destruction of" usable evidence of appellant's blood alcohol concentration. *McNeely*, 133 S. Ct. at 1561 (interpreting *Schmerber*). But the officer did not testify to either that judgment or its factual basis. Thus, we have no facts from which to conclude that a reasonable officer would have made such a judgment.[15] If we assumed on a silent record that such a judgment was reasonable, we would be adopting the natural metabolization rule that *McNeely* rejects and improperly placing the burden on the defendant to prove the practicality of obtaining a warrant. Not only is placing the burden on the defendant contrary to binding precedent from the Court of Criminal Appeals, *Robinson*, 334 S.W.3d at 778–79, placing the burden on the State to prove an exception to the warrant requirement makes sense because the facts regarding the practicality of obtaining a warrant are within its control. Indeed, the State has readily offered evidence regarding warrant availability in other cases. *See, e.g.*, *Sutherland*, 2014 WL 1370118, at *2–3 (discussing testimony from nighttime magistrate on duty, arresting officer, and sergeant with the Austin Police Department on the warrant process in Travis County).[16]

---

[15] *Cf. Joseph v. State*, 3 S.W.3d 627, 635 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that where officer testified it would have taken him a day to obtain a search warrant, there was sufficient evidence to conclude the officer "would not have been able to obtain a warrant in time to prevent the possible destruction of evidence").

[16] *See also McNeely*, 133 S. Ct. at 1562–63 (noting relevance to exigency analysis of "technological developments that enable police officers to secure warrants more quickly"); *McDole v. State*, 579 S.W.2d 7, 9 (Tex. Crim. App. [Panel Op.] 1979) (officer testimony that

Court decisions in this area provide examples of facts known to an officer that bear on whether it is objectively reasonable to conclude there is no time to attempt to obtain a warrant, but the record does not show any such facts here.[17] For example, in a case where the accident occurred an indeterminate amount of time before an officer arrived to investigate, *cf. Kuciemba v. State*, 310 S.W.3d 460 (Tex. Crim. App. 2010), an officer might be concerned based on evidence gathered during the investigation that the suspect had ceased drinking long enough ago that his blood alcohol concentration would diminish below the .08 threshold before a warrant could be obtained. It might also be the case that all officers on the scene are occupied with exigent tasks, or that any officers assigned to assist with obtaining warrants are unavailable, so that it is impractical to obtain a warrant before the evidence is lost. *Cf. Bartlett v. State*, 249 S.W.3d 658, 663 (Tex. App.—Austin 2008, pet. ref'd) ("Jones testified that these were the only two officers he had available at the time."). Or an officer might know that no magistrate was available to issue a warrant, or that obtaining a warrant would take so long that the evidence would be lost. *Compare Sutherland*, 2014 WL 1370118, at *10 (noting that county had phlebotomist available in jail basement, down the

_____

"[i]t would have taken between sixty and ninety minutes to obtain the warrant"); *Jones v. State*, 565 S.W.2d 934, 936 (Tex. Crim. App. [Panel Op.] 1978) ("The arresting officer had fifteen years of experience and testified that he knew it was unlikely that he could find a magistrate at that time of night to obtain a warrant, but he spent some fifteen minutes in an effort to do so. After he found no magistrates were readily available, he properly acted on the information provided him . . . ."); *Quilice v. State*, 624 S.W.2d 940, 943 (Tex. App.—San Antonio 1981, no writ) ("Gentle also testified that it was his experience that it takes him at least 45 minutes to type up a search warrant and affidavit and obtain a judge's signature on it. In light of that fact and the fact that the suspect would be leaving a known location at any time, Gentle had not sought to obtain a search warrant prior to the search of appellant.").

[17] This is not an exhaustive list of examples, and we do not hold that any scenario mentioned above necessarily demonstrates exigent circumstances, but these may be relevant factors for a court to consider in particular cases. We also note that Texas does not require evidence of blood alcohol concentration to prove an offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.01(2) (West 2011).

hall from an on-duty magistrate), *with Pine v. State*, 889 S.W.2d 625, 632 (Tex. App.—Houston [14th Dist.] 1994, writ dism'd w.o.j.) (holding warrant to seize cruelly treated colt not required because "[a]lthough the justice of the peace's office was only ten to twenty minutes away, by the time Dr. Brady made the determination that the colt needed to be moved in order to save its life, it was after the time the office would normally be closed").  On this record, however, no such findings can be implied.

The State and the dissenting opinion rely principally on *Schmerber*, with our dissenting colleagues going so far as to assert that "'[a]ll of the facts and circumstances' here and in *Schmerber* are the same in all material respects." *Post*, at 14.  But that is not the standard that *Schmerber* adopted for determining exigent circumstances.  Rather, as explained above, *Schmerber* asked whether "the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence," and it took pains to limit its holding to "the facts of the present record."  384 U.S. at 770, 772 (internal quotation marks omitted).[18]  Thus, it is unsurprising that our dissenting colleagues do not cite any cases applying the exigent circumstances standard they advocate: whether the facts at hand are materially indistinguishable from those in *Schmerber*.  *Post*, at 6.

Yet even if that were the relevant standard, we conclude our facts differ from those in *Schmerber* in four material ways.  First, the investigatory delay was much longer in *Schmerber*, in which Officer Edward Slattery continued to investigate the accident after the petitioner was transported to the hospital, leaving him with no time to secure a warrant.  Although we do not have the record, the parties' briefs indicate that the injuries in *Schmerber* were much more severe than

---

[18] The Court of Criminal Appeals has noted the narrowness of the *Schmerber* holding. *E.g., Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982); *Dudley v. State*, 548 S.W.2d 706, 707 (Tex. Crim. App. 1977).

those here as previously explained. By the time Officer Slattery arrived at the scene of the crash, the unconscious passenger was already in one ambulance and the seriously injured petitioner was being loaded into another for transportation to the hospital.[19] Officer Slattery did not indicate that he felt he had probable cause at this point to obtain a warrant authorizing a blood draw. Instead, he continued his investigation at the hospital by interviewing the passenger when he regained consciousness, and the passenger told the officer that the petitioner was driving the car.[20] Officer Slattery then interviewed the petitioner at the hospital within two hours of the accident, determined that he was intoxicated, and arrested him and obtained a blood draw.[21] In this case, by contrast, Officer Tran arrested appellant at the scene within 46 minutes of the accident, and only a few of these minutes were spent determining whether appellant's wife would accept transportation to the hospital as noted above.

Second, there was an unexplained delay of 86 minutes after appellant's arrest—and 76 minutes after the officer left the accident scene—until appellant's blood was drawn. No such delay was present in *Schmerber*, and there is no evidence here that it was impractical to obtain a warrant during that time.

Third, throughout Officer Tran's investigation, there was a second officer at the accident scene who could assist with the investigation or with obtaining a warrant. While one of the *Schmerber* briefs mentions a second investigating officer (Thomas Buell), it merely states that this officer formed the opinion that the petitioner was under the influence of alcohol. The brief does not discuss whether the officer was at the accident scene or formed his opinion at the hospital; nor does

---

[19] Brief of Respondent, *Schmerber*, 1966 WL 100528, at *4.

[20] *Id.* at *3, *5.

[21] *Id*. at *5; *Schmerber*, 384 U.S. at 769.

it reveal whether the officer's involvement was at a time when he could have assisted in obtaining a warrant.[22]

Fourth, as appellant succinctly put it in his brief, "it is not 1966." It is simply no longer true given modern advances that taking time to investigate and deal with injuries invariably means that there is no time to secure a warrant. *See McNeely*, 133 S. Ct. at 1561–63; *cf. Steagald v. United States*, 451 U.S. 204, 222 (1981) ("In routine search cases such as this, the short time required to obtain a search warrant from a magistrate will seldom hinder efforts to apprehend a felon. Finally, if a magistrate is not nearby, a telephonic search warrant can usually be obtained."). For these reasons, we conclude *Schmerber* does not excuse the State's failure to obtain a warrant in this case.

The State also relies on Officer Tran's testimony that he read appellant the required statutory warning and requested a breath sample, which appellant refused to provide. Then, "based on the total circumstances and based on my belief that his wife was hurt and that need medical attention, I complete the mandatory blood draw." This statement reveals no facts that could support an objectively reasonable conclusion that obtaining a warrant was impractical. *Torres v. State*, 182 S.W.3d 899, 903 (Tex. Crim. App. 2005) ("[O]pinions, even those of police officers, cannot be transformed into facts without supporting evidence."). As discussed above, neither the injury to appellant's wife nor other circumstances in the record support the conclusion that taking the time to obtain a warrant before drawing appellant's blood would have significantly undermined the efficacy of a blood alcohol test. Moreover, as the State acknowledges, the Transportation Code does not address whether a warrant is required before obtaining a mandatory blood draw, nor does it address exigent circumstances. Thus, Officer Tran's testimony

---

[22] Brief of Respondent, *Schmerber*, 1966 WL 100528, at *6.

that the statute required a blood draw under the total circumstances does not offer a reason why he failed to obtain a warrant. *See Weems*, No. 04-13-00366-CR, slip op. at 14 (holding record did not support exigent circumstances where "officer rel[ied] on the mandatory blood draw and implied consent statutes to authorize the blood draw").

The dissenting opinion nevertheless leans heavily on Officer Tran's testimony, suggesting that he really provided "two independent justifications for a warrantless blood draw"—"one based on the totality of the circumstances under *Schmerber* and another based on Chapter 724." *Post*, at 4–5, 12. Not so. The officer never mentioned *Schmerber*, a warrant, or a warrantless blood draw. Instead, the officer referred to the statutory warning required by section 724.015 of the Transportation Code and to the blood draw mandated by section 724.012, which he viewed as triggered based on the total circumstances and the wife's need for medical attention. As just explained, the statute does not mandate a *warrantless* blood draw, so there is no basis for the dissenting opinion's speculation that the officer was providing a reason for not obtaining a warrant.[23] In any event, the officer's conclusory and unsupported reference to the "total circumstances" is not a talisman that makes the constitutional requirement of a warrant disappear. *See Torres*, 182 S.W.3d at 903; *cf. Coolidge v. New Hampshire*, 403 U.S. 443, 461 (1971).

The mandatory blood draw statute cannot—and does not purport to—alter

---

[23] Officer Tran referenced the totality of the circumstances a second time during his testimony, telling appellant's counsel "[t]he report is written based on totality of circumstances, sir, and you're breaking things apart and it doesn't make sense to me." The line of questions leading up to this response dealt solely with whether Officer Tran was mistaken in writing in his report that appellant's wife was going to the hospital. This context reinforces the correctness of our interpretation that Officer Tran was referring to whether the statute was satisfied under the totality of the circumstances, not whether the totality of the circumstances presented an exigency excusing a warrant.

the Fourth Amendment warrant requirement or its recognized exceptions. *See* U.S. Const. art. VI, cl. 2. The statute does address the consent exception, providing that a person is "deemed to have consented" to taking breath or blood specimens if arrested for acts allegedly committed while driving intoxicated. Tex. Transp. Code Ann. § 724.011(a) (West 2011). But appellant expressly refused to consent to the breath test designated by the officer, and the State has not argued that statutorily implied consent satisfies the Fourth Amendment in this case.[24] For these reasons, the statute does not play a role in our Fourth Amendment analysis. *See Weems*, No. 04-13-00366-CR, slip op. at 14 ("[T]he implied consent and mandatory blood draw statutes are not exceptions to the Fourth Amendment's warrant requirement."); *Sutherland*, 2014 WL 1370118, at *9–10 (concluding statute does not modify Fourth Amendment and analyzing reasonableness of warrantless blood

---

[24] In a submission of supplemental authority following appellant's motion for *en banc* reconsideration, the State cited *Reeder v. State*, No. 06-13-00126-CR, 2014 WL 60162 (Tex. App.—Texarkana Jan. 8, 2014), *superseded on reh'g*, 2014 WL 1862669 (Tex. App.—Texarkana April 29, 2014, pet. filed), as "additional authority to show that § 724.012(b)(1)(C) is constitutional." We have no reason to fault the constitutionality of the mandatory blood draw statute in this case because it did not require Officer Tran to obtain a blood draw without first securing a warrant. It is the officer's failure to obtain a warrant and the State's failure to prove an exception to the warrant requirement, not the mandatory nature of the blood draw statute, that violate the Fourth Amendment.

To the extent the State intended its cite to *Reeder* to raise a new argument that implied consent provides a valid exception to the warrant requirement in this case, we decline to consider it. Such an argument not only contradicts the State's prior position that the officer had to obtain a warrant if no exigent circumstances existed, it also comes too late for our consideration. *See State v. Esparaza*, 413 S.W.3d 81, 90 (Tex. Crim. App. 2013) (holding that although notions of procedural default usually are not present when appellate court affirms trial court's decision on legal theory not presented to trial court, where an appellant "was never confronted with the necessity of meeting [a] burden," a purported alternative legal theory may not be a "'theory of law applicable to the case' that is available to justify the trial court's otherwise erroneous ruling on the appellee's motion to suppress"); *Rochelle v. State*, 791 S.W.2d 121, 124 (Tex. Crim. App. 1990) (holding that when State prevailed in trial court and raised issue for the first time in motion for rehearing on appeal, court of appeals had discretion not to address issue). We also note that the *Reeder* court recently issued a new opinion concluding that when the appellant expressly refused to consent to a blood draw, statutorily implied consent did not establish an exception to the warrant requirement, and the mandatory blood draw violated the Fourth Amendment. 2014 WL 1862669, at *3–4.

28

draw under traditional exigent circumstances test); *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted) (observing that "the statute does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws" and declining to treat the statute as "a new exception to the Fourth Amendment's warrant requirement separate and apart from the consent exception and the exception for exigent circumstances"); *State v. Baker*, No. 12-12-00092-CR, 2013 WL 5657649, at *4 (Tex. App.—Tyler 2013, pet. granted) (mem. op., not designated for publication) (citing *Mosely*, 348 S.W.3d at 442, for the proposition that "Chapter 724 does not authorize what the constitution forbids and cannot authorize an involuntary draw when the constitution forbids it"); *see also Reeder*, 2014 WL 1862669, at *4–5 & n.11 (agreeing with *Villarreal* and *Sutherland*); *cf. State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011) (addressing another aspect of the *Schmerber* analysis and holding that "Chapter 724 is not controlling authority when it comes to determining the reasonableness of how a blood draw was performed under the Fourth Amendment. . . . [T]he assessment of reasonableness is purely a matter of Fourth Amendment law.").

In sum, applying the legal standard of exigent circumstances found in *McNeely* and *Schmerber*, and implying in favor of the trial court's ruling all findings of historical fact supported by the record, we hold these facts do not support an objectively reasonable conclusion that obtaining a warrant was impractical. Accordingly, the State has not carried its burden to prove exigent circumstances that justify an exception to the Fourth Amendment's warrant requirement.

**D.** **The Texas exclusionary statute does not incorporate federal judge-made exceptions for officers' good-faith reliance on existing cases or statutes.**

On rehearing, the State offers additional legal arguments it says it would have made had it known about *McNeely*. In particular, the State argues that appellant's motion to suppress was properly denied because Officer Tran acted in good-faith reliance on (1) existing Texas precedent interpreting *Schmerber*, as well as (2) the Texas statute requiring a blood draw. We disagree.

The good-faith reliance cases on which the State's argument rests are federal cases that do not apply in Texas. Federal courts have a judge-made rule that excludes evidence obtained in violation of the Fourth Amendment, and its purpose is to deter such violations. *See Illinois v. Krull*, 480 U.S. 340, 347 (1987). The federal courts have recognized exceptions to the exclusionary rule in situations where suppression would not yield appreciable deterrence, such as when the search was conducted in objectively reasonable reliance on: (1) binding appellate precedent later overturned, *see Davis v. United States*, 131 S. Ct. 2419, 2428–29 (2011); (2) a state statute later held to be unconstitutional, *see Krull*, 480 U.S. at 350; or (3) good-faith reliance on a warrant, *see United States v. Leon*, 468 U.S. 897, 923–24 (1984).

In Texas, by contrast, the exclusionary rule is statutory. *See* Tex. Code Crim. Proc. art. 38.23 (West 2005). The Court of Criminal Appeals has held that exceptions to the federal exclusionary rule only apply to the Texas statutory exclusionary rule if they are consistent with the plain language of the statute. *Compare Wehrenberg v. State*, 416 S.W.3d 458, 473 (Tex. Crim. App. 2013) (adopting federal independent source exception), *with State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) (declining to adopt federal inevitable discovery exception).

Here, the statutory exclusionary rule already has an exception for "a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." Tex. Code Crim. Proc. art. 38.23(b). Because no warrant was issued in this case, this good-faith exception does not apply. *See Weems*, No. 04-13-00366-CR, slip op. at 16. The Court of Criminal Appeals has previously rejected an effort to broaden the good-faith exception using federal precedent, and it has refused to adopt federal exceptions inconsistent with the text of our statutory exclusionary rule. *Howard v. State*, 617 S.W.2d 191, 193 (Tex. Crim. App. 1979) (op. on reh'g) (declining to adopt federal good-faith doctrine of *Michigan v. DeFillippo*, 443 U.S. 31 (1979), a predecessor to *Krull*); *see also Daugherty*, 931 S.W.2d at 270 ("But Article 38.23 already contains one express exception, see Subsection (b) thereof, and according to the rules of statutory construction, where a statute contains an express exception, its terms must apply in all cases not excepted."); *id.* ("This construction is based on the express language of Article 38.23, not on blind obedience to United States Supreme Court decisions."). Based on these precedents, we hold the good-faith exceptions of *Davis* and *Krull* do not apply to the Texas exclusionary rule.

## CONCLUSION

Because the State did not carry its burden to prove an exception to the warrant requirement, we sustain appellant's second issue and hold that the warrantless seizure of his blood specimen for alcohol testing violated the Fourth Amendment. The trial court therefore erred in denying appellant's motion to suppress the specimen and the results of blood alcohol testing on it. Because this evidence inculpated appellant, we conclude it contributed to his guilty plea. *Kraft*

31

*v. State*, 762 S.W.2d 612, 614–15 (Tex. Crim. App. 1988).[25]

This Court's panel majority and dissenting opinions filed October 15, 2013, are withdrawn, and our judgment of that date is vacated. We reverse the trial court's judgment and sentence, which were based on appellant's guilty plea, and remand for further proceedings consistent with this opinion.


/s/    J. Brett Busby
        Justice


En Banc Court consists of Chief Justice Frost and Justices Boyce, Christopher, Jamison, McCally, Busby, Donovan, Brown, and Wise.


Justices Christopher, McCally, Brown, and Wise join the En Banc Opinion authored by Justice Busby. Justice McCally issues an En Banc Concurring Opinion. Justice Boyce issues an En Banc Dissenting Opinion in which Chief Justice Frost and Justices Jamison and Donovan join.

Publish — Tex. R. App. P. 47.2(b).

---

[25] *See also Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2009) (op. on reh'g); *Gonzales v. State*, 966 S.W.2d 521, 523–24 (Tex. Crim. App. 1998).